HENRY L. HIGGINSON & others *vs.* ALFRED T. TURNER
. & another.

Suffolk. March 21, 1898. — August 30, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Will — City as Trustee of Fund — Petition for Appointment of New Trustees.*

Under the will of Benjamin Franklin, proved in Philadelphia in 1790, giving a certain sum of money to the inhabitants of the town of Boston in trust, to "be managed under the direction of the selectmen, united with the ministers of the oldest Episcopalian, Congregational, and Presbyterian churches in that town," the city of Boston holds the fund in trust and is the trustee, and the appointment by the Probate Court of certain citizens of Boston as trustees is inoperative and void, and they are not entitled to the possession and control of the fund, as against the city.

BILL IN EQUITY, by Henry L. Higginson and six others, all of Boston, against the treasurer of the city of Boston and the city of Boston, to obtain possession of a certain trust fund.

The bill alleged that Benjamin Franklin, in a codicil to his will duly proved in Philadelphia, in the State of Pennsylvania, in 1790, provided as follows:

" I devote Two thousand Pounds Sterling, which I give, one thousand thereof to the Inhabitants of .the Town of Boston, in Massachusetts, and the other thousand to the Inhabitants of the City of Philadelphia, in Trust to and for the Uses, Interests, and Purposes hereinafter mentioned and declared.

" The said sum of One thousand Pounds Sterling, if accepted by the Inhabitants of the Town of Boston, shall be managed under the direction of the Select Men, united with the Ministers of the oldest episcopalian, Congregational, and Presbyterian Churches in that Town; who are to let out the same upon Interest at five per cent per Annum to such young married artificers, under the Age of twenty-five years, as have served an Apprenticeship in the said Town, and faithfully fulfilled the Duties re-. quired in their Indentures, so as to obtain a good moral Character from at least two respectable Citizens, who are willing to become their Sureties in a Bond with the Applicants for the Repayment of the Monies so lent with Interest according to the Terms herein (B. Franklin) after prescribed. All which Bonds are to be taken for spanish milled Dollars or the value thereof in current Gold Coin. And the Managers shall keep a bound Book or Books wherein shall be entered the Names of those who shall apply and receive the benefit of this Institution and of ·their Sureties, together with the Sums lent, the Dates, and other necessary and proper Records, respecting the Business and Concerns of this Institution. And as these Loans are intended to assist young married Artificers in setting up their Business, they are to be proportioned by the discretion of the Managers, so as not to exceed Sixty Pounds Sterling to one Person, nor to be less than Fifteen Pounds. And if the number of Appliers so entitled should be so large as that the sum will not suffice to afford to each as much as might otherwise not be improper, the proportion to each shall be diminished so as to afford to every one some Assistance. These aids may therefore be small at first; but as the

Capital increases by the accumulated Interest, they will be more ample. And in order to serve as many as possible in their Turn, as well as to make the Repayment of the principal borrowed more easy, each Borrower shall be obliged to pay with the yearly. Interest one tenth part of the principal, which Sums of Principal and Interest so paid in shall be again let out to fresh Borrowers. And as it is presumed that there will always be found in Boston virtuous and benevolent Citizens willing to bestow a part of their Time in doing good to the rising Generation by Superintending and managing this Institution gratis, it is hoped that no part of the Money will at any time lie dead or be diverted to other purposes, but be continually augmenting by the Interest, in which case there may in time be more than the occasions in Boston shall require, and then some may be spared to their Neighboring or other Towns in the said State of Massachusetts who may desire to have it, such Towns engaging to pay punctually the Interest and the Portions of the principal annually to the Inhabitants of the Town of Boston.

" If this Plan is executed and succeeds as projected without interruption for one hundred Years, the Sum will then be one hundred and thirty-one thousand Pounds, of which I would have the Managers of the Donation to the Town of Boston then lay out at their discretion one hundred thousand Pounds in Public Works which may be judged of most general utility to the Inhabitants, such as Fortifications, Bridges, Aqueducts, Public Buildings, Baths, Pavements, or whatever may make living in the Town more convenient to its People, and render it more agreeable to strangers, resorting thither for Health or a temporary residence. The remaining thirty-one thousand Pounds I would have continued to be let out on Interest in the manner above directed for another hundred Years, as I hope it will have been found that the Institution has had a good effect on the conduct of Youth, and been of Service to many worthy Character and useful Citizens. At the end of this second Term, if no unfortunate accident has prevented the (B. Franklin) operation, the sum will be Four Millions and Sixty-one thousand Pounds Sterling, of which I leave one Million sixty-one Thousand Pounds to the Disposition of the Inhabitants of the Town of Boston, and Three Millions to the disposition of the Government of the State, not presuming to carry my views farther.

" All the directions herein given respecting the Disposition and Management of the Donation to the inhabitants of Boston, I would have observed respecting that to the Inhabitants of Philadelphia; only as Philadelphia is incorporated, I request the Corporation of that City to undertake the Management agreeable to the said Directions. . . .

" It is my desire that this Institution should take place and begin to operate within one year after my decease; for which purpose due Notice should be publickly given previous to the expiration of that Year, that those for whose Benefit this establishment is intended may make their respective applications; And I hereby direct my Executors, the survivors or survivor of them, within six Months after my decease, to pay over the said Sum of Two thousand Pounds Sterling to such Persons as shall be duly appointed by the Select Men of Boston and the Corporation of Philadelphia, to receive and take charge of their respective Sums of One thousand Pounds each, for the Purposes aforesaid.

" Considering the accidents to which all human Affairs and Projects are subject in such a length of Time, I have perhaps too. much flattered myself with a vain Fancy that these Dispositions, if carried into execution, will be continued without interruption, and have the Effects proposed : I hope, however, that if the Inhabitants of the two Cities should not think fit to undertake the execution they will at least accept the offer of these Donations as a Mark of my good-Will, a token of my Gratitude, and a (B. Franklin) Testimony of my earnest desire to be useful to them even after my departure. I wish indeed that they may both undertake to endeavour the Execution of the Project."

The bill further alleged that until Boston became a city, in 1822, the fund was managed by the selectmen, nine in number, with certain ministers named; that there had been no selectmen since 1822; that no trustees were appointed by any court in the Commonwealth until March 18, 1897, when, by a decree of the Probate Court of the county of Suffolk, the plaintiffs were duly appointed trustees to manage the fund; that after the act of incorporating the city went into effect in 1822, and until the adoption of the revised charter of the city in 1854, the fund was managed by the mayor and aldermen of the city, eight in num-

ber, together with certain ministers; that after the adoption of
the revised city charter in 1854, the aldermen, then being twelve
in number, together with the ministers, acted as managers of the
fund until the year 1893; that since and including the year 1893
the aldermen, twelve in number, with the ministers of the three
churches designated in Franklin's will, have acted as such man-
agers; that different persons have acted as treasurers of the fund,
Mr. William Minot being such treasurer from 1811 until 1866;
that in 1866 Frederick U. Tracey, then the treasurer of the city,
was elected treasurer of the fund and continued such until 1876,
when he was succeeded in the office of treasurer by Samuel F.
McCleary, who was then the city clerk; that McCleary acted
as treasurer of the fund and also as city clerk until 1885, when
he ceased to be city clerk, and since that time has acted as treas-
urer of the fund in his personal capacity; that on December 28,
1893, at a meeting of the persons acting as managers of the fund,
seven aldermen and the rector of Christ Church being present,
the following vote was unanimously passed:

"Ordered, that the sum set apart from the general Franklin
Fund, as due to the City of Boston, on July first, 1893, viz.
Three Hundred and Twenty-Two Thousand Four Hundred and
Ninety and 20/100 Dollars ($322,490.20), with its accumulations,
be paid by the treasurer of the fund in January next to the City
Treasurer to constitute a special fund for the purchase of land
and for the erection thereon of the Franklin Trades School
and the equipment of the same; said expenditures to be made
under the direction of such department as may for the time being
be charged by the statutes and ordinances with the duty of erect-
ing and furnishing public buildings in the City of Boston. The
location of and plans for said school to be approved by the man-
agers of said fund."

The bill further alleged that thereupon McCleary paid over to
the city of Boston by payment to one Turner, the city treasurer, a
large portion of the fund, and certain accumulations of interest,
the same being now held by said Turner and said city; that the
vote passed on December 28, 1893, by those assuming to act as
managers of the fund, was invalid and inoperative, and did not
lawfully dispose of the fund; and that the plaintiffs were entitled
to the possession of the fund and its accumulations, and had re-

quested the city and Turner to pay to them the portion thereof held by them, but that they had refused so to do, and claimed to hold the same upon special trusts.

The prayer was that the defendants be enjoined from paying over the fund to any one but the plaintiffs; that until such payment the defendants hold the same to the uses and for the benefit of the plaintiffs as trustees upon trusts established by the codicil; and that the defendants be directed to pay the moneys received by them to the plaintiffs, discharged of all trusts except those imposed by the codicil.

The respondents asked that the bill be dismissed, with costs.

The case was reserved by *Allen,* J., upon the bill and answer, for the consideration of the full court.

The case was argued at the bar in March, 1898, and afterwards was submitted on briefs to all the justices.

*T. M. Babson,* for the defendants.

*S. Lincoln,* for the plaintiffs.

ALLEN, J. There can be no doubt that the title to the fund now in question was at the outset in the town of Boston. The gift was to the inhabitants of the town, in trust for the purposes specified, and was to be accepted by them. It is afterwards spoken of in the codicil as the donation to the town of Boston, and again as the donation to the inhabitants of Boston.

It is now well settled that a town may, in its corporate capacity, accept a gift of real or personal estate left to it in trust for charitable purposes, and may act as trustee and execute the trust. *Drury* v. *Natick,* 10 Allen, 169, 182. *Webb* v. *Neal,* 5 Allen, 575. *Nourse* v. *Merriam,* 8 Cush. 11, 19. *Green* v. *Putnam,* 8 Cush. 21. *Worcester* v. *Eaton,* 13 Mass. 371. *Vidal* v. *Philadelphia,* 2 How. 127, 190. Dillon Mun. Corp. (4th ed.) §§ 567–573.

The city of Boston is the same municipal corporation as the inhabitants of the town of Boston were. By being incorporated as a city, the identity of the municipal corporation was not lost. Property held by the inhabitants of the town in trust would pass to the city on the same trust. No action of any court was necessary in order to vest the title to such property in the city; and the same duties would rest upon the city as rested upon the town. This was clearly established in *Girard* v. *Philadelphia,*

7 Wall. 1, where the granting of a new city charter and the repeal of the old one, and the enlargement of the area of the city from two square miles to nearly one hundred and twenty-nine, were held not to affect the city's title to property held in trust, or its capacity to execute the trusts. Again, in *Broughton* v. *Pensacola*, 93 U. S. 266, it was held that rights of creditors were not lost by a change of charter, the court saying, " It will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs." See also *Mobile* v. *Watson*, 116 U. S. 289; *Shapleigh* v. *San Angelo*, 167 U. S. 646; *Hill* v. *Kahoka*, 35 Fed. Rep. 32; *Devereaux* v. *Brownsville*, 29 Fed. Rep. 742; *State* v. *Natal*, 39 La. An. 439; *Amy* v. *Selma*, 77 Ala. 103; Dillon, Mun. Corp. (4th ed.) §§ 171, 172.

It is however contended by the plaintiffs that, even although the city may hold the title to the fund in trust, and be in that sense a trustee, yet the duties of the persons referred to in the will as managers are such as also to constitute them trustees, with a right of possession and control of the fund. Some of the provisions of the will tend to support this view, but an examination of the whole of the provisions relating to this bequest and to the similar bequest to the city of Philadelphia leads us to the conclusion that the managers were not intended to be trustees. After making detailed provisions in respect to the gift to Boston, Dr. Franklin says : " All the directions herein given respecting the disposition and management of the donation to the inhabitants of Boston I would have observed respecting that to the inhabitants of Philadelphia; only as Philadelphia is incorporated, I request the corporation of that city to undertake the management agreeable to the said directions." The distinction in his mind appears to have been that Philadelphia, being a city, could manage the fund through its existing officers or boards, while the inhabitants of the town of Boston assembled in town meeting could not well pass upon the details of the management, and hence he provides, in the first instance, that the fund " shall be managed under the direction of the selectmen, united with the ministers of the oldest Episcopalian, Congregational, and Presbyterian churches in that town." Afterwards he says that " it is presumed that there

will always be found in Boston virtuous and benevolent citizens willing to bestow a part of their time in doing good to the rising generation by superintending and managing this institution gratis." A provision follows that "there may in time be more [money] than the occasions in Boston shall require, and then some may be spared to their neighboring or other towns in the said State of Massachusetts who may desire to have it, such towns engaging to pay punctually the interest and the portions of the principal annually to the Inhabitants of the Town of Boston." And still later he adds: "I hope, however, that if the inhabitants of the two cities should not think fit to undertake the execution they will at least accept the offer of these donations as a mark of my good will, a token of my gratitude, and a testimony of my earnest desire to be useful to them even after my departure. I wish, indeed, that they may both undertake to endeavor the execution of the project." There could be no pretence that the corporation of Philadelphia, or any boards of officers of that city, were intended to be trustees, as distinct from the city itself; and we think there was no intention to make the selectmen of Boston, or the three designated ministers, or the virtuous and benevolent citizens who might aid in superintending and managing the fund, or institution as it is called in the codicil, trustees of the property in a legal sense. They are nowhere called trustees. No provision is made for any formal appointment or succession to the title when new persons of the classes described should act as managers. Formerly, on the appointment of a new trustee, a conveyance of the property to him was necessary, but now the vesting of title without such conveyance is often provided for by statute. It may be that the founder of a trust could provide for the succession to the title without a formal conveyance; but the absence of all provision for such succession, or for any formal appointment or ascertainment of the ministers who were expected to serve, and the provision respecting the other persons who might take part in the superintendence and management, tend to negative the idea that any of the persons so designated or referred to were intended to be trustees. The case in this particular is quite different from *Drury* v. *Natick*, 10 Allen, 169, where it was expressly provided that the town should choose five trustees at the first annual

meeting after the decease of the testatrix, and every fifth year thereafter, who should hold office for the term of five years. In the present case, the duties of the managers, though in some respects like those usually exercised by trustees, are not such as necessarily to imply technical trusteeship. These duties bear some relation to those of visitors of a charity. The managers were probably intended to assist rather than to supplant the inhabitants of the town in the administration of the fund. It is not necessary at this time to define the extent and limits of their authority. It is enough to say that the city of Boston is the trustee, as successor to the inhabitants of the town of Boston, and that there is and has been no vacancy in the office of trustee. The Probate Court assumed to appoint the plaintiffs as trustees on the theory that there was a vacancy. It did not assume to appoint them as managers, and the statutes confer upon that court no jurisdiction to appoint such managers; and the power of a court of equity to appoint such managers, under its general jurisdiction over charities, need not now be considered. The plaintiffs assert no title except under their appointment as trustees, and this title fails. The selectmen and the ministers were never as individuals entitled to the possession and control of the fund, as against the town; nor are the plaintiffs entitled to such possession and control, as against the city.

For these reasons, in the opinion of a majority of the court, the entry must be,

*Petition dismissed.**

---

* After the decision in this cause an application was filed by the plaintiffs for compensation for their services and expenses. The rescript was modified so as to read as follows: " Petition dismissed, without costs. The application of the plaintiffs to be allowed costs as between solicitor and client out of the fund to be determined by a single justice."