ADDISON M. SHERMAN, Appellant, *v.* RICHMOND HOSE COM-
PANY, No. 2, and BANKERS TRUST COMPANY OF BUFFALO,
N. Y., as Administrator c. t. a. of ADELAIDE RICHMOND
KENNY, Deceased, Respondents, Impleaded with EDWARD
C. ATWATER and Others, Appellants.

Fourth Department, January 29, 1919.

Will — charitable bequest to incorporated hose company — dis-
solution of hose company and organization of city fire department
— members of disbanded corporation not entitled to divide funds
— equity — charitable trust — administration under doctrine of
cy-pres.

Where a testatrix, among other gifts, bequeathed a sum of money to a hose
company incorporated to assist in extinguishing fires in a certain village,
the income to be devoted to the reasonable and proper uses of said company,
and she further provided that, if such legacy should lapse or fail, she
bequeathed said sum to specified persons or the survivor of them, and
after the hose company had received the bequest the village was chartered
as a city and established its own public fire department and the former
hose company went into voluntary dissolution, said bequest should not be
divided among the members of the hose company at the date of its dis-
solution, nor should it pass to the surviving residuary legatee named in
case the bequest failed.

Said bequest was in the nature of one to charity and under the doctrine of
*cy-pres* which now obtains in this State should be administered by a

court of equity and devoted to the benefit of the inhabitants of the present city for protection against fire.

*As the court erroneously decided that the members of the disbanded hose company were entitled to the fund, the suit should be remitted to the Equity Term for a proper determination and the fund in the meantime should be retained by a stated depositary and the Attorney-General of the State and city attorney should be given notice of further proceedings.*

SEPARATE APPEALS by the plaintiff, Addison M. Sherman, and by the defendants, Edward C. Atwater and others, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Erie on the 21st day of February, 1918, upon the decision of the court after a trial before the court without a jury.

The judgment dismissed the complaint and also the counter-claim of the defendants, appellants, after a trial at the Erie Equity Term.

*Hamilton Ward* [*Irving W. Cole* of counsel], for the plaintiff, appellant.

*Edward A. Washburn,* for the defendants, appellants.

*William H. Coon* [*Carlos C. Alden* of counsel], for the respondent Richmond Hose Company, No. 2.

DE ANGELIS, J.:

The facts in this lawsuit are stipulated. The dispute arises in the application of the law to the facts.

The will of Adelaide Richmond Kenny contained, among others, the following provisions:

" *Thirtieth:* To Richmond Hose Company, No. 2, of Batavia, I give and bequeath Ten thousand dollars, to be kept at all times intact, and the income derived from the safe and judicious investment thereof to be devoted to the reasonable and proper uses of said company, for whatever purposes its members, acting as an organization, may see fit to direct."

" *Thirty-fourth:* If for any reason the legacies contained in this will to any of the church societies, to the Young Men's Christian Association, The Woman's Hospital Association, The Trustees of Union Free School District Number Two of the Town of Batavia, the Batavia Cemetery Association, Richmond Hose Co. No. 2, or the bequest of Six thousand dollars to the Holland Purchase Historical Society, or any [one] or more

of said legacies, shall lapse or fail, or for any cause not take effect in whole or in part, I give and bequeath the amounts which shall lapse or not take effect to Reverend Addison M. Sherman and Edward W. Atwater of Batavia, New York, or to the survivor in case one of them should die before me. In the use of the same I am satisfied that they would follow what they believe to be my wishes as derived from this will. I impose upon them however no conditions, leaving the same to them absolutely and without condition or restriction."

Adelaide Richmond Kenny, the testatrix, died February 4, 1905. She was a resident of Batavia (now city of Batavia) in the county of Genesee and State of New York. Her will was dated January 28, 1904, and was probated in the Surrogate's Court of Genesee county March 20, 1905.

On or about May 10, 1906, the legacy of $10,000 was paid by the sole executor of and trustee under the will to the Richmond Hose Company, No. 2.

Such sole executor and trustee died and thereafter and on or about June 18, 1915, the defendant Bankers Trust Company of Buffalo, N. Y., was duly appointed administrator with the will annexed of the unadministered assets of the estate of Adelaide Richmond Kenny and sole trustee under her will.

The plaintiff is the Addison M. Sherman referred to in the thirty-fourth item of the will above quoted. Edward W. Atwater mentioned in that item survived the testatrix and died September 2, 1910, leaving a will which was duly admitted to probate. Edward C. Atwater, the executor of the will, before the commencement of this action assigned and transferred as such executor any and all interest of Edward W. Atwater and of his estate in the fund of $10,000 and the securities in which the same is invested arising from the bequest in the thirtieth item of the will of Adelaide Richmond Kenny above quoted, to the defendants Edward C. Atwater, Alice Atwater Hickox, Frances Atwater Clapp and William L. Atwater, share and share alike.

At the time of her death Adelaide Richmond Kenny was possessed of property of the value of more than $2,000,000, and she disposed of the same by her will. The principal of the legacy given to Richmond Hose Company, No. 2, is intact, as her will directed, and is invested in bonds and mortgages.

On or about March 31, 1883, Richmond Hose Company, No. 2, was incorporated pursuant to chapter 397 of the Laws of 1873, as amended by chapter 250 of the Laws of 1879, " for the purpose of aiding and assisting in the extinguishing and suppression of fires in the said village of Batavia." Section 5 of the statute empowered such corporations to take and hold real or personal property bequeathed or devised to them. This statute was amended by chapter 27 of the Laws of 1890 and, so far as material, was repealed when the Membership Corporations Law was adopted by chapter 559 of the Laws of 1895 (Gen. Laws, chap. 43), except sections 5 and 11, which latter section had been added to the original act by the amendment contained in chapter 250 of the Laws of 1879. Sections 65 and 66 of the Membership Corporations Law of 1895 provided the substitute for the former law upon the subject. The present Membership Corporations Law was adopted by chapter 40 of the Laws of 1909 (Consol. Laws, chap. 35) and sections 100 to 105 inclusive, as amended by chapter 595 of the Laws of 1916, take the place of sections 65 and 66 of the former law and of section 5 of the act of 1873.

The city of Batavia superseded the village of Batavia on the 1st day of January, 1915, by virtue of the votes of a majority of the qualified electors of the village cast at a special election held June 9, 1914, pursuant to chapter 354 of the Laws of 1914 which act contains the charter of the city. Title VI of the charter (§§ 90 to 94 inclusive) provided for the establishment of a fire department for the city. Section 92 required the continuance of the use, for the time being, of the fire companies forming the fire department of the village which included Richmond Hose Company, No. 2. Pursuant to section 94, as amended by chapter 249 of the Laws of 1915, the taxpayers of the city adopted an ordinance at an election held February 15, 1916, to establish a paid fire department. Thereafter and on March 15, 1916, the common council passed a resolution, to take effect April 1, 1916, disbanding the volunteer fire organizations of the city which included Richmond Hose Company, No. 2, and instructing the city clerk to notify Richmond Hose Company, No. 2, of the passage of the resolution. The city clerk on the 17th day of March, 1916, gave such hose company notice of such resolution.

By virtue of subdivision c of section 3 of the charter of the city of Batavia the village of Batavia was dissolved and the city succeeded to and became vested with all the rights and property of the village.

Subdivision a of section 3 of the charter clothed the corporation with the right to " take by gift, grant, bequest and devise, and hold real and personal estate in *trust or perpetuity* for any purpose of education, art, health, *charity,* * * * or other *public use,* upon such terms as may be prescribed by the grantor or donor and accepted by said corporation."

Subdivision 3 of section 20 of the General City Law (Consol. Laws, chap. 21 [Laws of 1909, chap. 26], as added by Laws of 1913, chap. 247) empowers a city " to take by gift, grant, bequest or devise and to hold and administer real and personal property within and without the limits of the city, absolutely or in trust for any public or municipal purpose, upon such terms and conditions as may be prescribed by the grantor or donor and accepted by the city."   Section 21 of the General City Law (as added by Laws of 1913, chap. 247) provides that the term " public or municipal purpose," as used above shall include the promotion " of education, art, beauty, *charity,* * * * *safety,*" etc.

At the time of the dissolution of the village of Batavia its charter was embraced in chapter 140 of the Laws of 1853, as amended by chapter 195 of the Laws of 1884 and various other acts.

On the 26th day of March, 1916, pursuant to a resolution adopted by its members at a meeting held for that purpose in view of the action of the common council, Richmond Hose Company, No. 2, sold substantially all of its personal property except bonds and mortgages.   On the 23d day of May, 1916, an application was made to the Supreme Court at a Special Term held in the city of Buffalo for a voluntary dissolution of the hose company, pursuant to the provisions of the General Corporation Law (Consol. Laws, chap. 23 [Laws of 1909, chap. 28], § 170 *et seq.,* as amd. by Laws of 1909, chap. 240, and Laws of 1916, chap. 53), and a distribution of its assets among its members.   This application was made upon a petition made by all the members of the corporation, forty-four in number,

and all its officers and directors.   The petition set forth the proceedings of the common council above recited, the claim that there was no further need for the existence of the hose company and in specific terms asked that the securities and moneys representing the legacy of $10,000 bequeathed to the hose company should be distributed among the members thereof.   Upon such application the usual order to show cause was granted returnable at a Special Term of this court appointed to be held in the city of Buffalo on the 10th day of July, 1916.

The plaintiff brought this action to recover the property representing the legacy to the hose company upon the theory that the legacy lapsed or failed because of the situation arising from the establishment of the paid fire department in the city of Batavia and the effort of the hose company to secure the distribution of such property among its members. The summons and complaint, a notice of motion to be made on behalf of the plaintiff at such Special Term of this court appointed to be held in the city of Buffalo on the 10th day of July, 1916, for the appointment of a receiver of the property and assets of the hose company and an order restraining the disposition of such property and assets pending the hearing upon the motion, were served upon the defendants on the 30th day of June, 1916.

The hearing upon the return of the order to show cause in the dissolution proceeding and the hearing upon the motion in this action came on together at the Erie Special Term held July 10, 1916, and thereupon the court made an order continuing the restraining order during the pendency of the action, directing that the legacy and all the securities in which it was invested, together with the accrued interest thereon, should be deposited in the Bank of Batavia of the city of Batavia for safe keeping.   At the same time the dissolution proceeding was adjourned to December 31, 1916.

The defendants Edward C. Atwater, Alice Atwater Hickox, Frances Atwater Clapp and William L. Atwater in their answer set forth a counterclaim for one-half of the property represented by the legacy.   The hose company answered claiming that its members were entitled to all of such property share and share alike.   The administrator with the will

annexed in its answer sought judgment that the estate of the testatrix should be relieved from all further liability with respect to the property in controversy.

As already stated the facts in the litigation were stipulated and the cause was heard upon its merits at the Erie Equity Term. Thereupon the court made its decision upon which the judgment appealed from was entered, dismissing the complaint, dismissing the counterclaim, vacating the restraining order and awarding costs to the hose company to be recovered from the plaintiff.

I think the trial court was entirely right in dismissing the complaint and the counterclaim, but I do not think that the securities and money representing the bequest should be distributed among the members of the hose company.

In its last analysis the idea that underlies the law of charitable uses as applied to the jurisprudence of England is that when a donor parts with his property absolutely for a charitable purpose, such property shall be forever devoted to a charitable purpose, whether or not the particular charity for which the property may be donated shall exist when the trust becomes operative, and in case the same does not exist, the property may be devoted under the direction of the Court of Chancery to a kindred charity, *cy-pres*, that is, as near as may be, to the charity contemplated by the donor, or in the event of the non-existence of such charity, the property may be devoted by the crown to some other charity. Another way of stating the idea is that property once devoted to charity shall forever be devoted to charity. This conception of the devotion of property to charity connotes a trust and indefinite and uncertain beneficiaries. If the donor does not appoint a trustee to execute the trust, one must be appointed, and if the class of beneficiaries is not ascertainable from the instrument creating the trust, means must be taken to make use of the property donated for some charity. This doctrine of the English law was never fully adopted in this State as stated in *Williams* v. *Williams* (8 N. Y. 525, 548) and yet the head note in that case declares the doctrine to obtain in this State. The *Williams* case, so far as it sanctioned the English law of charitable uses, was overruled and that law declared not to exist in this State in *Holmes* v. *Mead* (52 N. Y. 332).

We must bear in mind that prior to the year 1848 our Legislature had by special acts established many charitable institutions designed to promote charities as broad and complete as the charities created, maintained and fostered under the English law of charitable uses. By chapter 319 of the Laws of 1848 a general law was adopted for the incorporation of associations for " benevolent, charitable, scientific and missionary " purposes, with certain restrictions as to the amount of property such corporations might hold, as to the amount of income therefrom which they might receive, and as to devises or bequests where a testator died leaving a wife, child or parent.

The case of *Wetmore* v. *Parker* (52 N. Y. 450), decided by the Court of Appeals in 1873, furnishes an interesting chapter in the development of the law upon the subject under consideration. It appeared in that case that one Roxana Childs made a bequest of $25,000 to the Utica Orphan Asylum to be perpetually invested by the trustees or managers thereof in certain securities, the interest and income of which sum, and only the interest and income, to be expended by the trustees or managers, in their discretion, for the support and maintenance of such asylum, having special reference to the suitable and comfortable care of and provision for the orphans in their charge, etc. The Utica Orphan Asylum was incorporated by chapter 55 of the Laws of 1856. The beneficiaries of the corporation were described in the statute in this manner: " The sole object of said society shall be the support and education of orphan children, but the trustees and managers of said society may, under such regulations as they shall from time to time adopt, admit children who have one parent living, to a participation in the benefits of said society." Certainly the beneficiaries contemplated by this statute were indefinite and uncertain. What child or children could demand the benefits of a home in this institution? What language could more appropriately provide for a trust than the language of the bequest? However, in order to preserve this bequest for the benefit of charity and to avoid the application of our law against perpetuities, the Court of Appeals held that by this bequest the testatrix gave the sum of $25,000 absolutely to the asylum and that there was no trust involved.

One of the reasons assigned for the refusal of the Court of Appeals to regard the bequest as establishing a trust was that the corporation, the asylum, could not be a trustee for itself. In the course of the opinion Chief Judge CHURCH said (p. 459):

" The income only of the permanent endowment of such an institution can be used with safety to its very existence. Any other course would frustrate, and, sooner or later, destroy its usefulness. No mortmain law, restrictive as they have sometimes been, ever prevented the donors from making their gifts in such terms as would preserve the principal from dissipation. It does not create a trust in any such sense, as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law by the donor, does not affect its ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself. (Lewin on Trusts, 15.*)

" Its duties are in some respects fiduciary; but not so as to interfere with its title to the personal property thus transferred. But assuming the binding force of the direction to permanently invest the principal, which must continue for all time, the ownership is not thereby suspended for a day, nor alienability prevented. Inalienability can only exist when there are no persons in being who can convey a title. If the whole interest in this property is not in the corporation, the remaining interest is in the heirs and representatives of the testatrix; and, by a united conveyance, a perfect title may always be conveyed. Upon either view of the question, there exists the *jus disponendi* in persons in being; and, hence, there is no suspension of ownership. These views would lead us to the same conclusion as was arrived at in respect to the bequest to the Huntington Church (*supra*), if we did not feel bound to follow that decision as authoritative."

The Huntington Church was the subject of the bequest in *Williams* v. *Williams* (*supra*).

*Bird* v. *Merklee* (144 N. Y. 544); *Matter of Griffin* (167 id.

---

* See star paging 2d Am. ed. — [REP.

71) and *Matter of Durand* (194 id. 477) followed the doctrine laid down in the *Wetmore* case.

Chapter 701 of the Laws of 1893, as amended by chapter 291 of the Laws of 1901, now forming section 12 of the Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], as amd. by Laws of 1909, chap. 144, and Laws of 1911, chap. 220), and section 113 of the Real Property Law (Consol. Laws, chap. 50 [Laws of 1909, chap. 52], as amd. by Laws of 1909, chap. 144) was in effect before the death of Adelaide Richmond Kenny and before the making of her will. This legislation has been held to restore the rule of the English law governing charitable trusts. (*Allen v. Stevens,* 161 N. Y. 122; *Bowman v. Domestic & Foreign M. Society,* 182 id. 494; *Matter of Shattuck,* 193 id. 446; *Matter of Robinson,* 203 id. 380; *Matter of Cunningham,* 206 id. 601; *Trustees of Sailors' Snug Harbor v. Carmody,* 211 id. 286; *Matter of MacDowell,* 217 id. 454; *Butterworth v. Keeler,* 219 id. 446.)

In *Matter of MacDowell* (*supra*) it was held that the *cy-pres* doctrine had been restored by this legislation.

The plaintiff asserts that the thirty-fourth provision of the will of Adelaide Richmond Kenny is authority for his claim to the property representing the legacy. That provision, as already appears, is to the effect that if this bequest with others should lapse or fail, or if for any cause it should not take effect in whole or in part, the legacy should go to the plaintiff and Edward W. Atwater, or survivor, if either should die before the testatrix, etc. I think it needs no argument to show that this claim of the plaintiff is without merit.

*Wetmore v. Parker* (*supra*) is authority for the proposition that the legacy to the hose company became the absolute property of the company, whether or not in the present state of the statutory law such proposition needs necessarily to obtain. In that connection it is to be noted that the property was given solely for the purposes of the corporation, which were charitable, and that the will of the testatrix was made and she died after the restoration of the doctrine of charitable uses by the legislation already mentioned, and there is room for the assertion of the proposition that this bequest, especially in view of its language, created a charitable trust. In any view of the law upon the subject it is indisputable that this bequest

was dedicated to charity and we are asked by the respondent hose company and the appellants to strike down this charity and permit the property involved to be diverted into private ownership. This we cannot do.

The hose company is a charitable organization, and, upon its dissolution, to distribute its assets among its members would be a perversion of the trust for which the assets were contributed. (*Bethlehem Borough* v. *Perseverance Fire Co.*, 81 Penn. St. 445; *Humane Fire Company's Appeal*, 88 id. 389; *Centennial & Memorial Association of Valley Forge*, 235 id. 206.)

But there is another aspect to the case leading to the same general result. I think that we may fairly say that the hose company was an adjunct corporation of the village of Batavia. In order to be incorporated it was required to obtain the consent of the trustees of the village and its public duties were performed subject to the direction of the municipal authorities. It is altogether certain that the testatrix when she made the bequest to the hose company must have realized that the village would grow, that its inhabitants would increase, that its boundaries would be extended and that a change in its form of government might follow. When by the act of the Legislature and the votes of the qualified electors of the village the village was transformed into a city, the territory of the village with some additions became the territory of the city and the inhabitants of the village with some others became the inhabitants of the city. But the identity of the municipality was not lost. (*Higginson* v. *Turner*, 171 Mass. 586; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *Mobile* v. *Watson*, 116 id. 289; *Shapleigh* v. *San Angelo*, 167 id. 646.)

We may note in passing that the *Higginson* case involved the bequest made by Benjamin Franklin of £2,000, £1,000 to the inhabitants of the city of Philadelphia and the other £1,000 to the inhabitants of the town of Boston for certain charitable purposes.

While the legislation by which the village of Batavia was advanced to the dignity of a city does not appear to be explicit upon the subject we might well hold that the beneficial interest in the property of the hose company had already passed to the city for the benefit of its inhabitants under

subdivision c of section 3 of the charter heretofore referred to herein. It might be possible for the hose company, were it to continue to exist, to hold the property for the benefit of the city, but as the hose company has determined to surrender its life, we need not interest ourselves to prolong that life, when our statute of charitable uses provides for the protection of the property.

I recommend that the judgment appealed from, so far as it defeats the claim of the plaintiff and the claim of the defendants other than the hose company, should be affirmed and that in all other respects it should be reversed; that the findings of the Equity Term directly or indirectly approving the proposition to permit the distribution of the property involved among the members of the hose company, and, particularly the eleventh finding of fact, should be disapproved and reversed; that the action should be remitted to the Equity Term to the end that the assets of the hose company, including those represented by the bequest of Adelaide Richmond Kenny, may be devoted to the benefit of the inhabitants of the city of Batavia for protection against fire in accordance with the views expressed herein; that the injunction order heretofore granted herein should be restored and the property on deposit with the Bank of Batavia should be retained by it until the further order of the court; that the Attorney-General of the State and the city attorney of the city of Batavia should be given notice of the further proceedings in the action, and that no costs should be allowed to any party on this appeal.

All concurred.

Judgment modified in accordance with the opinion, without costs of this appeal to any party. Form of order and findings to be settled on March 5, 1919, at ten o'clock A. M.; notice of settlement of order to be given to the Attorney-General and to the city attorney of the city of Batavia.