Dore, J.
The parties hereto submit this controversy pursuant to sections 546-548 of the Civil Practice Act. The Attorney-General of the State of New York, plaintiff herein, basically contends that the corporate defendant, The Sailor’s Snug Harbor, must be administered by not less than eight active, competent and qualified trustees; that a quorum of not less than five is required to transact any of the business of the corporate defendant; and that this court should appoint trustees. There are presently six competent and qualified trustees, one of whom, Honorable William O’Dwyer, Mayor of the City of New York, *272 requests permission to resign. All the defendants, other than the Mayor, oppose the position taken by the Attorney-General.
The issues submitted essentially involve construction of (1) the will of Robert Richard Randall, deceased, and (2) the original corporate charter of the corporate defendant (chapter 4 of the Laws of 1806 and the subsequent amendment thereto by chapter 124 of the Laws of 1835). The will and the said legislative enactments are set forth in full in the agreed facts submitted.
Captain Randall died June 5, 1801, and his will concededly drafted by Alexander Hamilton, was admitted to probate in the county of New York on July 10, 1801. By the will, Captain Randall gave his residuary estate in trust to build “an Asylum, or Marine Hospital ” to be called “ The Sailors’ Snug Harbor ” to maintain and support “ aged, decrepit and worn-out sailors” and authorized the trustees to apply for an act of the Legislature of the State of New York to incorporate for the purposes specified. The corporate defendant was so created by chapter 4 of the Laws of 1806.
As trustees, the will named the persons then filling for the time being the following named public or private offices “ and their respective successors” in the said offices “forever”: the Chancellor of the State of New York, the Mayor of the City of New York, the recorder of the city of New York, the president of the Chamber of Commerce, the president and vice-president of the Marine Society, the senior minister of the Episcopal Church of the City of New York, and the senior minister of the Presbyterian Church of the City of New York. The will referred to the persons designated as “ my said charity Trustees ” and directed them to build an asylum or marine hospital “ as soon as they, my said charity Trustees, or a majority of them ” should judge the proceeds of the estate to be sufficient and to use the income of the estate to support the* hospital and maintain the sailors “ in such a manner as the said Trustees, or a majority of them, may from time to time, or their successors in office may from time to time, direct ” (italics mine); the will directed “ that the above-mentioned officers for the time being and their successors, should forever continue and be the governors thereof, and have the superintendents of the same”.
The original corporate charter provided that the persons holding the offices specified in the will “ and their successors in office respectively, in virtue of their said offices ” should be constituted a body corporate; and that “ they and their successors shall have continual succession that “ they and their *273 successors ” hold and dispose of the estate “ according to the intention of the said will that the estate “ is hereby declared to be vested in them and their successors in office, for the purposes therein expressed that they or their successors shall be “ capable in law of holding and disposing of the said real and personal property devised ”, and purchasing, holding and disposing of “ any other real and personal estate, for the use and benefit of the said corporation, in such manner as to them, or a majority of them, shall appear to be most conducive to the interest of the said institution ”; and that “any five or more of the said trustees shall constitute a quorum to transact any of the business and concerns of the said corporation.” (Italics mine.) The statute also provided that the act be deemed to be “a public act, and be construed in all courts and places benignly and favorably, for the purposes therein intended.”
By chapter 69 of the Laws of 1814, the charter was clarified as to which specific Episcopal and Presbyterian ministers in New York City were to be trustees. By chapter 276 of the Laws of 1828, the charter was further amended to authorize the trustees to purchase a site or grounds for the marine hospital and build a marine hospital forever known as Sailors’ Snug Harbor, after approbation of the “ court of chancery ” shall be obtained. Following the amendment of 1828, the corporate defendant purchased land in Staten Island and built the marine hospital which commenced operations in 1833 and has been ever since in continuous operation.
Chapter 124 of the Laws of 1835 provided that the Governor of the State of New York with the advice and consent of the Senate “ shall appoint three additional trustees of the Sailors’ Snug Harbour, being freeholders and residents of the city of New York, who shall, during the term for which they are appointed, have co-ordinate powers with the other trustees in every respect.” The additional trustees were to hold their offices for three years and in case of vacancy before the expiration of said term, the vacancy was to be filled for the remainder of the term by the Governor in the same manner.
The then Governor appointed three additional trustees pursuant to said law but the corporate defendant acting on the authority of Trustees of Dartmouth Coll. v. Woodward (4 Wheat. [U. S.] 518 [1819]) refused to accept the same. The persons appointed under that act never served and thereafter neither the then Governor nor any subsequent Governor has ever appointed or attempted to appoint any person or persons as additional trustees.
*274 The Constitution of the State of New York of 1846 “ abolished ” the office of Chancellor of the State of New York, and the board of the corporate defendant was thereby' reduced to seven trustees. By chapter 412 of the Laws of 1907 the Legislature directed that the office of recorder of the county of New York (successor to the recorder of the city of New York) should “ cease to exist ” after December 31, 1907. After abolition of such offices no additional trustees have been appointed. Since 1907 the board of trustees of the corporate defendant has consisted of the six incumbents from time to time of the remaining offices designated in the Randall will.
In Inglis v. Trustees of Sailors’ Snug Harbour (3 Pet. [U. S.] 99) the Supreme Court of the United States affirmed the validity of Captain Randall’s gift as a valid charitable trust in perpetuity. In that case it was also held that the naming of the trustees by their official designation was a designation of the person and not the office; i. e., “ The trust was not to be executed by them in their official characters, but in their private and individual capacities.” (Inglis v. Trustees of Sailors’ Snug Harbour, supra, p. 114).
In Trustees of Sailors’ Snug Harbor v. Carmody (158 App. Div. 738) this court upheld the right of this corporate defendant (plaintiff in that litigation) to sue the Attorney-General of the State of New York as the only necessary party defendant for a construction of the will and for instructions as to the trustees’ powers and duties in the administration of the trust. The Court of Appeals unanimously affirmed (211 N. Y. 286). In the Garmody case (supra, p. 756), this court held: “ The title is vested in the corporation charged with the trust under the will. The heirs of the testator have no interest, reversionary or otherwise. The uncertain beneficiaries of the trust, i.e., the 1 aged, decrepit and worn-out sailors,’ have no standing in court for any purpose. Their interests are in the care of the State as parens patries and are represented by the Attorney-General.”
The Mayor of the -City of New York, designated as a trustee by virtue of his office, alleges that he is so occupied with official duties as Mayor that he has seldom been able to function as an active trustee and that at times the interests of the city and the corporate defendant conflict and claims the right to renounce.
After setting forth the agreed statement of facts, substantially summarized above, plaintiff contends that there must always be not less than eight active, qualified trustees with a quorum-of not less than five and that this court or the Supreme Court at Special Term should appoint trustees in place of the *275 Chancellor and the recorder and in place of any qualified trustee who renounces for the time being to act as such.
Defendants contend that there are as such “ no successors in office ” to the office of Chancellor or recorder entitled to act as trustee; that under a fair and proper construction of the will and the original charter there is no requirement that trustees be appointed in place of the Chancellor or the recorder or of a qualified trustee who renounces for the time being; that a majority of the qualified and acting trustees is a quorum for the transaction of business; and that chapter 124 of the Laws of 1835 is invalid.
The parties submit their respective contentions which they claim cannot be settled without judicial determination of questions of law and equity and ask this court’s instructions construing the rights and powers of the parties and submit for decision the following questions :
A. Are there any “ successors in office ” entitled to qualify and act as trustees of the corporate defendant in the place and stead of the Chancellor of the State of New York and the recorder of the city of New York, and, if so, who are such persons?
B. If the answer to the foregoing question “ A ” is in the negative, does the will of Robert Richard Randall, deceased, or the charter of the corporate defendant require that trustees be appointed in the place and stead of the Chancellor of the State of New York and the recorder of the city of New York, or either of them?
C. Does the will of Robert Richard Randall, deceased, or the corporate charter of the corporate defendant require that the board of trustees of the corporate defendant shall consist, at all times, of eight persons?
D. In the event any person entitled to act as a trustee of the corporate defendant, such as the Mayor of the City of New York, is unable to serve as an active trustee, can such a person renounce the trusteeship so vested in him for his term of office and thereby create a temporary vacancy among the trustees of the corporate defendant?
E. Does the will of Robert Richard Randall, deceased, or the charter of the corporate defendant require that a successor or substitute trustee be appointed in the place and stead of a trustee who renounces or refuses to act as such or is unable to serve as an active trustee and to perform the duties of a trustee during the tenure of office of the individual who so renounces or refuses to act?
*276 F. If the answer to the foregoing questions, labelled “ B ”, “ C ”, “ D ”, or “ E ”, is in the affirmative, will this court, or can the Supreme Court of the State of New York, appoint a successor or substitute trustee or trustees?
G. Does the Governor of the State of New York have the power to appoint three additional trustees of the corporate defendant under the provisions of chapter 124 of the Laws of 1835?
H. Under a fair and proper construction of subdivision II of chapter 4 of the Laws of 1806, does a majority of the qualified and acting trustees of the corporate defendant constitute a quorum thereof for the proper transaction of the business and concerns of the corporate defendant?
I. Does the Legislature of the State of New York have the power to enact a statute changing the constituency of the board of trustees or appointing additional trustees of the corporate defendant without the express consent and acceptance by the corporate defendant or to enact any statute at variance with the terms of the will of Robert Richard Randall, deceased?
J. Is there any other, further, additional or different relief that can be given by this court, in addition to that requested or presented by the questions hereinbefore set forth, so that the public interest may be served?
The parties also pray that costs and disbursements be charged against the corporate defendant.
At the outset we consider the jurisdiction of the court to entertain this submission. In Hanrahan v. Terminal Station Comm. (206 N. Y. 494, 503, 504) the Court of Appeals (referring to section 1279 of the Code of Civil Procedure, predecessor of section 546 of the Civil Practice Act) in an opinion by Chase, J., held: 1 ‘ The provisions of the statute authorizing the submission of a controversy are limited to controversies which can be followed by an effective judgment on the submission. [Citing numerous cases.] * * * The Code does not mean that the opinion of the Appellate Division can be obtained in a proceeding of this character upon a mooted question of law, merely because the answer thereto would or might be a guide to the determination of a lawsuit between the parties interested to be instituted upon other and further facts than those stated. The Code contemplates the existence and presentation of a state of facts upon which the person named as plaintiff in the submission could bring an action at law or in equity against the person named therein as defendant, and which of themselves, if established by *277 proof in such an action, would entitle the person named as plaintiff to some sort of a judgment against his adversary, if the court agreed with the plaintiff as to the law applicable to the facts. ’ ’
Numerous other cases hold that the court will dismiss submissions that merely ask for an opinion as to rights and legal relations. But those cases were decided before enactment of section 473 of the Civil Practice Act (the declaratory judgment act). By that act the Supreme Court is given the power in any action or proceeding “ to declare rights and other legal relations on request for such declaration whether or not further relief is or could be claimed, and such declaration shall have the force of a final judgment.” Accordingly, on the agreed state of facts before us, while (as hereinafter indicated) all of the questions asked may not be answered, we do not dismiss the submission, but accept it as a request by all parties for a declaratory judgment under the statute permitting such.
Both the Chancellor and recorder as such have long since ceased to exist in the specific offices named in the will of Captain Randall. The office of “ chancellor ” was “ abolished ” from the first Monday of July, 1847, by section 8 of article XIV of the New York Constitution of 1846 and the Chancellor’s functions were vested in the Supreme Court. Section 5 of chapter 412 of the Laws of 1907 provided that after midnight on December 31, 1907, “ the office of recorder * * * shall cease to exist ”. Both parties agree that under the present Constitution of the State of New York (art. VI, § 19) no justice of the Supreme Court may be named as a successor trustee, as such justices are forbidden by the Constitution to “ hold any other public office or trust ” (except as members of a constitutional convention). The Attorney1G-eneral suggests that this court or the Supreme Court at Special Term may designate as “ successors ” to the Chancellor and the recorder a former Supreme Court justice. But obviously such persons cannot be considered “ successors ” to either office.
Alexander Hamilton who drew the will of Captain Randall obviously wished to provide for some sort of judicial supervision of the trust created by the will. To this end, he doubtless suggested naming the offices of Chancellor and recorder. But the Carmody case (158 App. Div. 738, supra) has determined with regard to this specific trust that the Supreme Court has the right of judicial supervision and the court has exercised such supervision. Accordingly, the need of judicial members of the board no longer exists.
*278 If Alexander Hamilton, a recognized master of English prose, ever precise and meticulous in the accurate use of words, had received instructions from Captain Randall or had advised him that there always should be eight trustees and no less, the will beyond doubt would have expressly so provided. It did not so provide. In no place does.the will specify eight or indeed any specific minimum number of trustees forever to be maintained. It merely names offices then existing and the successors in such offices. There is no provision that if any named office is abolished, additional appointments must be made.
Captain Randall’s will repeatedly refers to “ a majority ” of the trustees or their “ successors ” as qualified to act. The original charter, specifically referring to the manner in which the trustees and their successors shall administer the trust, expressly states that they shall act “ in such manner as to them, or a majority of them, shall appear to be most conducive to the interest of the said institution.” (Italics mine.) The original act also at the end states that “ any five or more ” shall constitute a quorum. But in the light of the state of facts there presented and other provisions of the act relating to administration of the trust by “ a majority ” of the trustees and their successors— that phrase is merely descriptive of a majority (i.e., five out of eight, as the board was then constituted) and not a legislative mandate that at all times a quorum must be “ five ” and no less. The act described “ a majority ”, hut no mandatory number therefor. If in reference to “ five ” as a quorum the Legislature intended to vary the meaning of the word “ majority ” as used by Captain Randall in his will, the statute would be pro tanto invalid, as the Legislature is without power “ to alter the directions of a testator or to divert vested rights.” (Carmody case, supra, p. 754; Dartmouth Coll, case, supra.)
Plaintiff relies on City of Boston v. Doyle (184 Mass. 373, 382, 383 [1903]) a case involving the will of Benjamin Franklin which had also been before the same Massachusetts court in an earlier case, Higginson v. Turner (171 Mass. 586 [1898]). The Doyle case is not here controlling and in any event is clearly distinguishable on its facts. Benjamin Franklin by his will had given a sum of money to the inhabitants of the Town of Boston to be managed by the selectmen (then nine in number) and ministers of certain churches. The Town of Boston became the City of Boston in 1822 and the mayor and aldermen assumed the selectmens’ duties. Litigation later arose between the aldermen, acting as managers of Dr. Franklin’s fund, and two ministers on the board. But in that ease the facts clearly demonstrated the *279 necessity for appointment of successor trustees by the court to prevent failure of the trust and to continue the administration of the public charity in question. In this case, as above pointed out, on the stipulated facts, no necessity is shown.
On the statement of facts here submitted and the applicable law, we hold that neither the will nor the charter requires eight qualified and acting trustees to transact any of the business of the corporate defendant or the present appointment of trustees for such purposes to take the places of the chancellor, and the recorder, or of the Mayor if he renounces or is unable to act. We also hold that “ five ” trustees are not necessary for a proper quorum to transact such business and that the qualified and acting trustees may act by a majority thereof. Accordingly, questions “ A ”, “ B ”, “ C ” and “ E ” should be answered in the negative and question “ H ” in the affirmative.
Question “ D ” has been submitted by reason of the above-indicated request, of the present Mayor of the City of New York. The only facts stipulated with regard to resignation or renunciation by any member of the present board of trustees relates to the Mayor alone. Question “ D ”, however, instead of asking if the Mayor may resign or renounce asks if “ any person entitled to act ” may renounce the trusteeship for his term of office and thereby create a temporary vacancy. (Italics mine.) In the precise form in which it is proposed that question on the facts stipulated may not be answered. The court should not consider or anticipate states of fact not presented by the facts agreed upon or speculate on what can or should be done on facts not agreed on or presented; e.g., the refusal or inability to act of any other trustee. As the Court of Appeals said in Cohen v. Manufacturers Safe Deposit Co. (297 N. Y. 266, 269): “ Such a submission of controversy calls upon the courts merely to define the effect of the agreed facts as matter of law and excludes power to find any additional fact — even if the submitted facts logically and reasonably admit of further important inferences which a trier of the fact might very well draw.”
However, acting on the agreed facts with regard to resignation or renunciation of the Mayor, question “ D ” is deemed only, to ask if the Mayor may resign and the answer to the question as so limited is in the affirmative, but not on the basis of the claimed occasional conflict of interest. The Mayor or any other trustee of this or any other trust, public or private, may from time to time in the performance of his fiduciary duties be faced with an occasional conflict of interests. On such occasions the trustee in question must properly refrain from voting or *280 influencing directly or indirectly the decision of the board in the particular matter in question. Occasional conflict of interest of the city and the corporate defendant is no basis whatever for the Mayor’s renouncing the trust. If, however, the present Mayor of the City of New York considers that his duties as Mayor are so onerous for the time being that he cannot at the same time act as trustee for defendant, he may for such grave reasons renounce. But such renunciation, because of inability for the time being to perform the functions of his office as-trustee, creates only an ad interim vacancy in the board and only during incumbency of the present Mayor or his continuing inability to act for the time being and does not bind the Mayor or his successor or successors in the office of Mayor.
Question “ F ” as submitted, is not one but several questions, and, on the agreed facts, cannot and should not be answered. In form, at the outset, it seems to refer to the four specified previous questions in the conjunctive and then immediately later in the disjunctive. By the use of the auxiliary verb “ will ”, it suggests raising a question relating to the exercise of discretion by the Supreme Court. Thereafter, on the contrary, by the use of the auxiliary “ can ”, it suggests that a question of power only is being raised. If the agreed facts showed any necessity requiring appointment of a successor trustee or trustees, the Supreme Court, representing the State as parens patrios, e.g., to prevent failure of the trust or its maladministration, could when necessity was shown appoint a trustee or trustees. Under the law of New York, if the settlor manifests a clear intention that a specific number of trustees should always act and never be diminished, new trustees will be appointed in case of vacancies; but in the absence of such provision .(and here as above shown there is none), vacancies will be filled only if it is necessary or conducive to the continuous proper administration of the trust, and where no such necessity is shown (and that is so in this case) a new trustee is not appointed and the remaining qualified and acting trustees administer the trust ( 1 Scott on Trusts, § 108.1; Restatement, Trusts, § 108, comment b; Matter of Kellogg, 214 N. Y. 460, 466; Matter of Leavitt, 135 App. Div. 7, 9; Matter of Dietz, 132 App. Div. 641, 643).
This trust has not been administered by eight trustees for more than a hundred years but there is no allegation in the submission of any facts showing that there is any danger of the trust failing or that the corporate defendant has not been properly administered or that the public interest or the interests of the beneficiaries have been adversely affected. Unsupported *281 statements in the Attorney-General’s brief that “ the public interest ” requires such appointments, may not be taken as the equivalent of facts agreed to in the submission showing such necessity or requirement. Nor may the reference to “ the public interest ’ ’. in connection with such appointments contained in plaintiff’s contentions in the submission itself be considered as a statement of facts showing any necessity (City of Yonkers v. Yonkers Elec. Light & Power Co., 173 App. Div. 477, 479; Kelly v. Kelly, 72 App. Div. 487, 488).
The Attorney-General asks in his reply brief that, if the court considers references in defendants’ brief to lack of necessity or public interest requiring appointments, this court should take judicial notice of antecedent litigation on file in the New York County Clerk’s Office between plaintiff and the corporate defendant and other defendants, 16 and determine for itself ’ ’ whether the Attorney-General exercised his discretion in asserting 1 ‘ the public interest ” herein. Obviously, in a submission of controversy, the court cannot, “ determine for itself ” issues of fact. (Cohen v. Manufacturers Safe Deposit Co., 297 N. Y. 266, supra.) For the appointments requested, the statement of facts herein is silent in respect to either necessity or public interest.
As this court pointed out in the Carmody case (158 App. Div. 738, supra) if any facts indicated that the continued existence of the trust was imperiled, the Supreme Court would have power on a showing of necessity, to act and fill the vacancy or vacancies. This submission sets forth no facts whatever showing any necessity for additional appointments and we may not go outside the stipulated facts to decide questions not presented. Accordingly, question “ F ” as framed with regard either to the power or the discretion of the Supreme Court, will not be answered.
The power of the Governor to appoint additional trustees purports to rest upon chapter 124 of the Laws of 1835. In the Dartmouth Coll, case (4 Wheat. [U. S.] 518, supra) the New Hampshire Legislature authorized the Governor of that State to appoint three additional trustees of the board of trustees of Dartmouth College. But the United States Supreme Court held that this State statute impaired the obligation of contracts within the meaning of section 10 of article I of the United States Constitution. The Legislature is without power to alter the directions of a testator or divest vested rights and cannot enact any statute at variance with the terms of the will of Captain Randall (see, also, Carmody case, supra). Question “ G ” is answered in the negative.
*282 Question “ I ” as framed is not one question but two: the first, relates to the power of the Legislature to change the constituency of the board or to appoint additional trustees; the second, relates to the power of the Legislature to enact a statute “ at variance with the terms of the Will ”. The first question in “ I ” should not be answered. The agreed statement of facts presents no necessity for the Legislature or the State as parens patriae to act. So far as the second question in ‘1 I ” asks whether the Legislature may enact a statute at variance with the terms of the will, the answer to that question is in the negative (Carmody case, supra, p. 754).
Question “ J ” obviously should not be answered. It raises no justiciable issue and wholly fails to pose any determinative issue of law on the agreed facts.
Accordingly, questions “ A ”, “ B ”, “ 0 ”, “ E ”, “ Gr ” and the second question in “ I ” are answered in the negative; question “ H ” is answered in the affirmative. Question “ D ”, deemed to ask if the present Mayor of New York City may resign, is answered in the affirmative. Questions “ F ” and “ J ” and the first part of “ I ” are not answered.
Judgment should be entered accordingly, with costs and disbursements, as prayed for by all parties who have filed briefs herein, against the corporate defendant.