CITY OF BOSTON & another *vs.* JAMES M. CURLEY & others.

Suffolk.   November 13, 1930. — September 11, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*The Franklin Foundation. Boston.   Trust,* Delegation of powers by trustee, Charitable, Trustee's duties as to investments.  *Corporation,* Charitable.  *Constitutional Law,* Separation of powers of government, Impairment of obligation of contracts.

St. 1908, c. 569, incorporating as The Franklin Foundation the then managers of the Franklin fund and their successors in office, wrought no change of substance in membership of the board of managers nor in the title, uses or management of the fund, but merely provided a more convenient means for the managers to execute their trust; and the statute is valid.

St. 1908, c. 569, § 2, providing in part that The Franklin Foundation should be a board or department of the city of Boston, did not have the effect of placing the selection of the members of the corporation in the hands of the mayor of the city, notwithstanding the provision of St. 1909, c. 486, § 9, that all heads of departments and members of municipal boards, with certain exceptions, should be appointed by the mayor.

St. 1908, c. 569, does not violate either art. 30 of the Declaration of Rights.or the prohibition of art. 1, § 10, of the Constitution of the United States against the enactment of a law impairing the obligation of contracts.

Under St. 1908, c. 569, the management of the Franklin fund, title to which is in the city of Boston, is vested in The Franklin Foundation; and the city treasurer, as *ex officio* custodian of the fund, is bound to comply with all proper directions of The Franklin Foundation as to its management.

A vote by The Franklin Foundation, to withdraw the accumulating fund from investment in a life insurance company enjoying high reputation and financial prosperity and to reinvest about one fifth in that company and the remainder, "under the direction of the Treasurer of The Franklin Foundation . . . in securities in which funds of savings banks of this Commonwealth may by law be invested," was not beyond the powers of The Franklin Foundation as trustee of the fund.

It was not an improper delegation of power for The Franklin Foundation to direct the treasurer of the city of Boston to cancel the certificate of investment in such life insurance company and to procure a new certificate of investment for a part of the money thus obtained; the authority delegated extended no further than to incidental and administrative details.

Every member of The Franklin Foundation is charged with the obligations of a trustee as to the Franklin fund and must exercise his best judgment and wise discretion as to the fundamental duties involved in the management of the fund: the incorporation of the managers was merely to facilitate the administration and execution of the trust, not to relieve the managers from such obligations as trustees.

The investment of the Franklin fund is one of the fundamental fiduciary duties resting upon the members of The Franklin Foundation.

The direction to the city treasurer to invest a portion of the fund "under the direction of the Treasurer of The Franklin Foundation . . . in securities in which funds of savings banks of this Commonwealth may by law be invested" was too indefinite even when coupled with a by-law of The Franklin Foundation to the effect that investments be made in such securities of that nature as the finance committee might direct: the city treasurer was bound to make such new investments only upon specific direction manifested by a vote participated in by the members of the corporation.

In the circumstances, a donation by Andrew Carnegie, which, after compliance with certain conditions imposed by him, was made to "duplicate" the Franklin fund and which was accomplished by the transmission of bonds and cash by the donor to the treasurer of the city of Boston, was to be treated in the same manner as the Franklin fund, so that the title to the donation passed to the city and its management was vested in The Franklin Foundation.

BILL IN EQUITY for instructions, filed in the Supreme Judicial Court for the county of Suffolk on August 8, 1930.

The vote of The Franklin Foundation on January 21, 1930, referred to in the opinion, was as follows:

"VOTED — That the Treasurer of the City of Boston be authorized, under the direction of the Treasurer of The Franklin Foundation, Mr. Charles E. Cotting, to withdraw from the Massachusetts Hospital Life Insurance Company the funds held in that Company by The Franklin Founda-

tion, and forming the Second Part of the Franklin Fund; and that the City Treasurer be instructed, under the direction of the Treasurer of The Franklin Foundation, to reinvest in the same Company, namely, the Massachusetts Hospital Life Insurance Company, the sum of one hundred thousand dollars ($100,000), under the terms of the new agreement; and that the City Treasurer be further authorized to re-invest, under the direction of the Treasurer of The Franklin Foundation, the balance of the fund, in securities in which funds of savings banks of this commonwealth may by law be invested.

"VOTED — That the Treasurer of the City of Boston be authorized, under the direction of the Treasurer of The Franklin Foundation, Mr. Charles E. Cotting, to accept the offer of the United States Steel Corporation to redeem two hundred thousand dollars ($200,000.) of United States Steel Corporation, fifty-year, five per cent Bonds, Series B, and two hundred eight thousand dollars ($208,000.), Series F, held by The Franklin Foundation as the Carnegie Donation at one hundred fifteen dollars ($115.00) and interest as per correspondence with the City Treasurer, dated December 9, 1929.

"That the City Treasurer be authorized to reinvest the proceeds from the sale of the above-mentioned Steel Bonds, under the direction of the Treasurer of The Franklin Foundation, in securities in which funds of savings banks of this commonwealth may by law be invested."

Other material facts are stated in the opinion. The prayers of the bill were as follows:

"1. Is your petitioner, Edmund L. Dolan, as he is treasurer of the city of Boston, bound by the directions contained in the letter of C. E. Cotting, as he is treasurer of The Franklin Foundation, with reference to the investing or reinvesting of any portion of the Franklin fund, or may the said Edmund L. Dolan, as he is treasurer of the city of Boston, use his discretion in the investment of such fund?

"2. If any of said Franklin fund is invested either by Edmund L. Dolan as he is treasurer of the city of Boston,

by C. E. Cotting as he is treasurer of The Franklin Foundation, by The Franklin Foundation or by the managers of the Franklin fund, to whom should any certificate of deposit or agreement to pay either principal or interest be made payable?

"3. If the whole or any of the Franklin fund is invested in a certificate of deposit with the Massachusetts Hospital Life Insurance Company . . . should the same be made payable to the treasurer of said Franklin Foundation or to the city of Boston or to the treasurer of the city of Boston or to The Franklin Foundation, and should said certificate of deposit indicate in writing that the title to the certificate of deposit is in the city of Boston?

"4. Should the custody of the Franklin fund be in the petitioner, the treasurer of the city of Boston, or should the custody of the Franklin fund be in the managers · of the Franklin fund, or should it be in The Franklin Foundation, or should the custody of the Franklin fund be in the treasurer of The Franklin Foundation?

"5. Is the treasurer of the city of Boston subject to any directions as to the Franklin fund, either by the managers of the fund, The Franklin Foundation, or by the treasurer of The Franklin Foundation?

"6. Is The Franklin Foundation entitled to the possession or custody of the Franklin fund or should the Franklin fund be in the possession or custody of the managers, under the will of the late Benjamin Franklin, as managers and not as members of The Franklin Foundation?

"7. Has the petitioner, Edmund L. Dolan, as he is treasurer of the city of Boston, or has The Franklin Foundation or the managers of the Franklin fund or C. E. Cotting, as he is treasurer of The Franklin Foundation, authority to invest the whole or any part of the Franklin fund in a certificate of deposit of the Massachusetts Hospital Life Insurance Company, . . .

"8. Has the petitioner, as he is treasurer of the city of Boston, has The Franklin Foundation, has C. E. Cotting, as he is treasurer of The Franklin Foundation, the right to invest the whole or any part of the funds with the Massa-

chusetts Hospital Life Insurance Company in a certificate of deposit . . . .

"9. Is the petitioner bound by the directions of The Franklin Foundation or the managers of the Franklin fund or the treasurer of The Franklin Foundation as to the investment or reinvestment of the Carnegie fund?

"10. Should the Carnegie fund be in the custody, possession and control of The Franklin Foundation and not in the possession and custody of your petitioner, Edmund L. Dolan, as he is treasurer of the city of Boston?

"11. To whom should any moneys be made payable on investments made of the Carnegie fund and should the same be made payable to the city of Boston, the treasurer of the city of Boston, The Franklin Foundation, or the treasurer of The Franklin Foundation?

"12. Should the Carnegie fund be in the custody and possession of Edmund L. Dolan, as he is treasurer of the city of Boston, free from any control or direction by The Franklin Foundation?

"13. Has The Franklin Foundation the authority to delegate its direction and control of the fund to the treasurer of said Franklin Foundation?

"14. Is the petitioner bound by the vote of The Franklin Foundation, under date of January 21, 1930, wherein said vote says that the city treasurer be instructed under the direction of the treasurer of The Franklin Foundation to reinvest in the same company, namely, the Massachusetts Hospital Life Insurance Company the sum of $100,000 under the terms of the new agreement and that the city treasurer be further authorized to reinvest, under the direction of the treasurer of The Franklin Foundation, the balance of the fund in securities in which funds of savings banks of this Commonwealth may by law be invested?

"15. Has the vote of January 21, 1930, any binding effect upon the petitioner, as he is treasurer of the city of Boston, to take any action whatsoever in keeping with the provisions of this vote?

"16. Should the Franklin fund or the Carnegie fund,

or either or both of these funds, be paid over by the petitioner, as he is treasurer of the city of Boston, to The Franklin Foundation?

"17. Are the members of The Franklin Foundation appointed by decrees of the Supreme Judicial Court for the county of Suffolk as aforesaid, the duly appointed members of said corporation, without any action by the mayor of the city of Boston?

"18. If any functions of management or control remain in the board of managers of the Franklin fund, notwithstanding the act of 1908, incorporating The Franklin Foundation, do those persons who have been appointed members of said The Franklin Foundation by decrees of the Supreme Judicial Court constitute as individuals the board of managers of the Franklin fund pursuant to the decree of said court in said case in *Boston* v. *Doyle* [184 Mass. 373] . . . ?

"19. And your petitioners further pray that if the court shall deem that the management or control of said Franklin fund is not vested in The Franklin Foundation but remains in the said board of managers and that those persons heretofore appointed members of said The Franklin Foundation by decrees of the Supreme Judicial Court do not constitute as individuals the said board of managers of the Franklin fund, pursuant to the decree of said court in *Boston* v. *Doyle,* that this court will appoint said board of managers accordingly."

The suit was reserved by *Wait,* J., upon the bill and answers for determination by the full court.

*J. P. Lyons,* Assistant Corporation Counsel, for the petitioners.

*B. E. Eames,* for the respondents.

RUGG, C.J.   This is a petition for instructions as to the proper custody, management and control of two funds held for public charitable purposes, one known as the Franklin fund and the other as the Carnegie donation.   The plaintiffs are the city of Boston and the city treasurer of Boston.   The defendants are The Franklin Foundation, a corporation created by St. 1908, c. 569, the individuals constituting the

members of that corporation and the same individuals
described as members of the board of managers of the
Franklin fund.   The Commonwealth and the Attorney
General have been joined as defendants.   A public charity
is in issue.   By its answer the Commonwealth disclaims
interest.

The case has been reserved for the determination of this
court upon the bill and answers.   Therefore all allegations
of fact well pleaded in the petition so far as not denied in
the answers and all averments in the answers responsive to
the petition must be taken to be true.   *Joslin* v. *Boston
& Maine Railroad,* 274 Mass. 551, and cases cited.

The Franklin fund had its origin in the codicil to the will
of Benjamin Franklin whereby one thousand pounds ster-
ling were given to the town of Boston.   Testamentary in-
structions were given for the investment of this fund.   The
testator directed that at the end of one hundred years,
estimating that the original gift with its accretions of in-
terest would then amount to one hundred thirty-one thou-
sand pounds, one hundred thousand pounds should then be
laid out in public works of the most general utility to the
inhabitants of Boston and the remainder of the fund should
constitute a fund to be invested and accumulated for an-
other one hundred years.   The testator also provided that
the gift should be managed under the direction of the
selectmen of the town and the ministers of the oldest Epis-
copalian, Congregational and Presbyterian churches in the
town.   Question was raised whether the legal title to the
fund was in the town or in the managers, and in 1898 it was
held in *Higginson* v. *Turner,* 171 Mass. 586, that that title
was in the municipality in trust for the purposes specified
and not in the managers.   It was decided in *Boston* v.
*Doyle,* 184 Mass. 373, that the selectmen of the town of
Boston were abolished when Boston was incorporated as a
city, that the aldermen of the city did not succeed the
selectmen of the town as managers of the fund, that there-
fore the board of managers as constituted by the testator
ceased to exist in 1822, that only the clerical members re-
mained eligible to continuance in the administration of the

trust, and that a court of general equity jurisdiction had power and ought to appoint nine managers from among the virtuous and benevolent citizens of Boston selected because of their intellectual and moral qualifications, of whom the mayor of Boston should be one, to serve, together with the three ministers specified in the codicil, as a board of managers. Pursuant to that decision a decree was entered in 1904, appointing twelve persons, including the three ministers, the mayor and eight citizens at large, as a board of managers to have the charge and management of the entire Franklin fund.

The estimate of the testator as to the size of the fund at the end of the first one hundred years was not realized. Therefore it was divided in the proportions indicated. The sum of $322,490.20 was set aside and devoted to the establishment of an industrial school known as the Franklin Union and the sum of $102,455.70 was held to accumulate for the second one hundred years.

By St. 1908, c. 569, those at that time constituting the board of managers were made a body corporate under the name The Franklin Foundation. It was provided that these and their successors in office should continue a body corporate, that the members of the corporation should be as specified in said decree of 1904, that vacancies in the class of eight virtuous and benevolent citizens of Boston should be filled by the court which made that decree and that any of those eight members might be removed for cause. It was further provided that the corporation be deemed a board or department of the city of Boston and on behalf of the city should have the custody, management and control of the Franklin Union and of the part of the fund accumulating for the second one hundred years. The powers of the corporation as set out in the several sections of the act were the same as the powers of the board of managers set forth in the codicil to the will and in the decree of 1904. It was specified that the legal title to the property "now constituting said Franklin Union," to that part of the Franklin gift already appropriated for the establishment of the Union and to any other fund or property

already given to the city of Boston for the benefit of the
Franklin Union should remain in the city of Boston, but
the corporation was to hold the title to and invest and re-
invest real or personal property thereafter given for the
benefit of the Franklin Union. Other powers were con-
ferred not relevant to the case at bar. By St. 1927, c. 40,
the powers of the corporation as to gifts and funds other
than the Franklin fund, given to it or its predecessor the
board of managers of the Franklin fund, were much enlarged.

There was nothing illegal in the incorporation of the man-
agers as The Franklin Foundation to manage the Franklin
fund. The departure from the precise plan of management
outlined by the testator was required by the incorporation
of the town of Boston as a city. That departure was de-
clared to be necessary and the new scheme for the selection
of managers was framed all in accordance with a decision
of this court. The board of managers as existing just prior
to the enactment of said c. 569 was legal and its powers were
defined. The act of incorporation wrought no change in the
membership of the board of managers. The succession in
case of vacancies conformed to the terms of the testamen-
tary gift as necessarily modified by our decision. The pow-
ers and responsibilities of the managers continued to be the
same without extension or restriction save in nonessential
particulars tending toward ease in execution of the duties
arising under the trust. The corporation is simply a means
to enable the trustees to execute the trust with less diffi-
culty. The control of the funds has been always and still
continues to be with designated individuals in their private
capacities clothed with a corporate being. The title to the
fund is continued in the city of Boston by explicit words.
The beneficiaries and ultimate disposition of the fund are
undisturbed. No change is attempted in the title, the man-
agement, or the uses of the trust. In *Nelson* v. *Cushing*,
2 Cush. 519, it appeared that a testator left a fund for the
establishment of a free school to be paid over by his execu-
tors to trustees to be appointed to administer the trust by
the selectmen of Newburyport. The selectmen pursuant to
the will appointed seven trustees to receive the fund and

manage the trust. After the money was paid over a statute was enacted making the trustees a corporation with the usual powers, privileges and restrictions of charitable corporations, with liberty to hold property to be applied to the purposes of education in conformity to the will of the testator. It was said by Chief Justice Shaw at page 527: "This act, in our judgment, does not vary the powers or the duties of the trustees, or change the character of the school placed under their management. It enables them to act in a corporate name, and to have a corporate seal; and it affords them the facility of taking conveyances, obligations and securities, in their corporate name, and avoids the necessity of changing such securities upon a change of individual members composing the board," (as to this last clause see now G. L. c. 203, § 6; *Glazier* v. *Everett*, 224 Mass. 184, 187–188); and at page 529: ". . . the act of incorporation . . . did not constitute this charity. It did not enlarge or diminish the powers of the trustees, except as to the mode of acting in certain particulars, and it did not exempt them from the duties and responsibilities, which would have devolved upon them as trustees acting in their natural capacities."

The case at bar appears to be covered in every essential particular by the grounds stated and the point decided in *Nelson* v. *Cushing*. This is one of the instances where the corporation, although a separate entity for all purposes to facilitate the administration and execution of the trust, does not afford a shield to the managers in any of their trust responsibilities to the court, or to the representatives of public authority rightly acting toward the enforcement of the trust. The court will look through the corporate form in order to hold the individual members to the responsibilities and duties resting on trustees in their natural capabilities.

There is nothing inconsistent with this conclusion in the reasoning or points decided in *Stone* v. *Framingham,* 109 Mass. 303, *Winthrop* v. *Attorney General,* 128 Mass. 258, *Cary Library* v. *Bliss,* 151 Mass. 364, or *Adams* v. *Plunkett,* 274 Mass. 453. Without reviewing those decisions

in detail, it is enough to say that in each of them an attempt was made to change the legal title to the trust, the method of administering the trust or the uses to which the trust should be put, from the design established as to those matters by the donor of the trust. As already pointed out, the statute here assailed does not undertake to do any one of these things or anything similar in kind. The trust remains unimpaired as to title, use and management. This conclusion also receives some support from the decision in *Ware* v. *Fitchburg*, 200 Mass. 61, where a corporation was established as an agency of the municipality to execute a trust, the founder of which was silent as to managers.

The enactment of St. 1909, c. 486, amending the charter of the city of Boston, provides in § 9 that all heads of departments and members of municipal boards, with exceptions not here material, shall be appointed by the mayor. That section does not control the selection of the managers of the Franklin fund and the members of The Franklin Foundation. The clause of § 2 of said c. 569 that the corporation thereby created shall be deemed a board or department of the city of Boston does not have that effect. The general principles of law, which became operative on that subject when the scheme of the testator turned out to be impossible by reason of changed conditions, govern that subject. Those general principles as applicable to a trust already accepted and operative cannot be abrogated as to any particular instance by the General Court. *Opinion of the Justices*, 237 Mass. 613, 617–618. See *Opinion of the Justices*, 237 Mass. 619, 623. These two statutes together cannot be presumed to have been intended to have that effect. *Robinson's Case*, 131 Mass. 376, 377. *Kennedy* v. *Commissioner of Corporations & Taxation*, 256 Mass. 426, 430. The members of The Franklin Foundation owe their selection to the will of the donor and the decrees of the court and not to any action on the part of the mayor of Boston.

It follows from this analysis of the scope and effect of the statute that its enactment does not conflict with art. 30 of the Declaration of Rights of the Constitution forbidding

any one of the three departments of government to exercise the powers of either or both of the other departments. That principle is to be scrupulously observed. *Opinion of the Justices,* 234 Mass. 612, 621. *Worcester County National Bank, petitioner,* 263 Mass. 444, 457, and cases cited. There is nothing in said c. 569 violative of that principle.

The interpretation already given to said c. 569 demonstrates that no one of its provisions violates the prohibition of art. 1, § 10, of the Constitution of the United States against the enactment by a State of a law impairing the obligation of contracts. Courts are alert to see that there is no infraction of that inhibition. *Cary Library* v. *Bliss,* 151 Mass. 364, 375–378. *Adams* v. *Plunkett,* 274 Mass. 453. It is not pertinent to the statute as here construed. That statute does not in any degree impair the contract arising from the acceptance of the trust under the will of Benjamin Franklin.

Part of the Franklin fund set aside to accumulate for the second one hundred years, valued as of January 31, 1930, at $476,348.99, is at present invested with the Massachusetts Hospital Life Insurance Company in three certificates of deposit. The Franklin Foundation voted on January 21, 1930, to withdraw these funds, to reinvest $100,000 in the same company and to reinvest the balance "in securities in which funds of savings banks of this commonwealth may by law be invested." Copies of these votes were transmitted to the treasurer of the city of Boston. Under the by-laws of The Franklin Foundation the city treasurer is *ex officio* the custodian of all funds or property, title to which is in the city of Boston, for the establishment, maintenance or benefit of the Franklin Union, and is required to invest and reinvest the same in such securities and on such terms as The Franklin Foundation may direct. The treasurer of The Franklin Foundation transmitted to the city treasurer his powers of attorney to cancel the certificates of deposit and to collect the amounts due thereon. The city treasurer raises question as to his obligation to act in accordance therewith. As has already been pointed out, the legal title to the Franklin fund is in the city of Boston and

the management and the control of that fund are in The
Franklin Foundation as the successor of the managers
originally designated by the testator with all the fiduciary
obligations incident thereto and hereinbefore amplified.
*Boston* v. *Doyle*, 184 Mass. 373, 381–382. *Worcester City
Missionary Society* v. *Memorial Church*, 186 Mass. 531.
This is the arrangement recognized and continued by St.
1908, c. 569, § 4. The city treasurer is bound by the vote of
The Franklin Foundation of January 21, 1930, to convert
into cash the certificates of the Massachusetts Hospital Life
Insurance Company and to reinvest $100,000 thereof in a
new certificate in the same company. The final determina-
tion of that subject is vested in The Franklin Foundation.
It is stated in the record that the Massachusetts Hospital
Life Insurance Company has long enjoyed the highest repu-
tation, is financially prosperous and has long been con-
sidered by trustees a proper depository for trust funds under
the form of contracts set out in the record. Thus it conforms
to the standard established by the law of this Common-
wealth as to trust investments. The withdrawal of nearly
four fifths of the fund from a single investment to the end
that it be reinvested in other choice securities, thus giving
a wider variety of stable investments, cannot be pronounced
beyond the power of trustees acting in accordance with the
degree of care required in this Commonwealth. *Kimball* v.
*Whitney*, 233 Mass. 321, and cases reviewed. The power
of attorney coupled with the copy of the vote was suffi-
cient to require the city treasurer to act in cashing the
certificates and making investment of part of the money
thus procured in a new certificate of the Massachusetts
Hospital Life Insurance Company. This was not an im-
proper delegation of power and extended no further than
to incidental and administrative details. *McClure* v. *Mid-
dletown Trust Co.* 95 Conn. 148. *Speight* v. *Gaunt*, 9 App.
Cas. 1, 11, 20.

The vote to make reinvestment of the balance of the
cash to be realized from cancellation of the certificates "in
securities in which funds of savings banks of this Common-
wealth may by law be invested" was too indefinite even

when coupled with the by-law of The Franklin Foundation
to the effect that investments be made in such securities
of that nature as the finance committee may direct. Every
member of that corporation is charged with the obligations
of a trustee and must exercise as to every investment his
best judgment and wise discretion. To make investments
is fundamental, not merely administrative, in the adminis-
tration of a trust. To be a manager of the fund involves
the performance of personal duty, which as to investments
to be made cannot be delegated to a committee or an agent.
In general the duties of a trustee cannot be delegated.
They are personal. Determination to make an investment
does not necessarily require the affirmative vote of all mem-
bers of the corporation but it requires action by a majority
with opportunity and obligation, so far as reasonably prac-
ticable, for all to express their judgments. *Morville* v.
*Fowle,* 144 Mass. 109. *Trustees of Andover Theological Sem-
inary* v. *Visitors,* 253 Mass. 256, 294. *In re Bellamy &
Metropolitan Board of Works,* 24 Ch. Div. 387, 400, 403–
404. *In re Flower & Metropolitan Board of Works,* 27 Ch.
Div. 592. *Bohlen's Estate,* 75 Penn. St. 304, 317. *Bales*
v. *Perry,* 51 Mo. 449. It is only by thus preserving the
individual members of the corporation, The Franklin
Foundation, as managers of the trust fund in essential
features, such as the investment of the corpus of the trust,
that the constitutionality of said c. 569 creating the cor-
poration can be sustained against objections which would
be fatal to it under the doctrine declared in *Cary Library*
v. *Bliss,* 151 Mass. 364. The corporation does not sup-
plant the individuals in the performance of these funda-.
mental attributes of the trustees. As has been said, its
purpose is to facilitate the administration and execution of
the trust, not to relieve the individuals composing it from
the obligations incident to their fiduciary obligation as man-
agerial trustees. It follows that the city treasurer is bound
to make new investments only upon specific direction man-
ifested by a vote participated in by the individuals com-
posing the corporation.

The form of certificate of deposit, bond or other invest-

ment of the Franklin fund should indicate, so far as practicable, the legal owner, the trustee and the trust. A designation of the payee or holder to accomplish that result may be in substance of this tenor: City of Boston — The Franklin Foundation — Franklin Fund.

The prayers of the petition numbered 1–8 both inclusive and 13–18 both inclusive, all relating to the Franklin fund, have been sufficiently answered by what has been said.

The relevant facts concerning the Carnegie donation are these: — In 1904 Andrew Carnegie indicated his willingness to duplicate in amount the Franklin fund provided conditions were met as to the kind of school to be established and that the city of Boston should provide a site for it. There was compliance with those conditions. Correspondence touching the subject was had with the chairman of the managers of the Franklin fund and with the mayor of Boston who was also one of the managers. The city of Boston provided the site for the school under St. 1905, c. 448. 'The Franklin Union, as the school was named, was constructed by the managers on the site thus provided. The managers were notified informally at a meeting in January, 1906, that 'the city treasurer of Boston had received from Mr. Carnegie $408,396.48 as an endowment fund for the proposed Franklin Union, $408,000 being in bonds of the United States Steel Corporation and $396.48 in the form of a check. Pursuant to vote of the managers their secretary sent a letter of appreciation to Mr. Carnegie. No vote was ever passed by the city council of Boston accepting the Carnegie donation and no notice of acceptance by the city was ever sent to the donor.

The Carnegie gift of bonds has remained intact with the city treasurer and the donation has been treated by the managers both before and after their incorporation under said c. 569 as funds under their management and control and the income has been used for the benefit of the Franklin Union. In 1929 notice was sent to the city treasurer that funds had been provided for the redemption of those bonds "at 115 and interest." On January 21, 1930, a vote was passed by The Franklin Foundation at a special meet-

ing directing the city treasurer to accept this offer of redemption and thus to convert these bonds into cash. The city treasurer challenges the binding force of this vote. It is a rather close question whether the title to the Carnegie donation vested in the city of Boston or in the managers of the Franklin fund as trustees. It is apparent from the correspondence that the purpose of Mr. Carnegie was centered on the establishment of the school subsequently established under the name Franklin Union. That was the public work to which was devoted the portion of the Franklin fund required by the governing testamentary provision to be expended at the expiration of the first one hundred years. It was to the support of that school that Mr. Carnegie desired to contribute. He wanted to "duplicate" the fund of Benjamin Franklin. Apparently it was due to the insistence of Mr. Carnegie that the city of Boston provided the site for that institution. The title to land for the site was to be taken in the name of the city under St. 1905, c. 448, § 2. The bonds and check constituting the donation were sent to and received by the city treasurer of the city of Boston. They have been continuously in his custody as have also the securities in which the Franklin fund has been invested. The managers of the Franklin fund and The Franklin Foundation have exercised control and management over the Carnegie donation on the same footing as over the Franklin fund. They have used the income of the donation to the support of the school. No specific directions as to the devolution of title or management of this donation were given by Mr. Carnegie. The reference in §§ 2 and 4 of said c. 569 to money, fund or property already given to the city of Boston for the benefit of the Franklin Union other than that derived from the Franklin gift appears to be to the Carnegie donation.

All these factors lead to the conclusion that the Carnegie donation is to be treated in the same way as the Franklin fund. It is to be presumed in the absence of any indication to the contrary that its title and management follow the same course as that of the Franklin fund. *Trustees of Andover Theological Seminary* v. *Visitors*, 253 Mass. 256,

272–273.   The management and the control of this dona-
tion were in the board of managers before the effective
date of said c. 569, and since then have been in The Frank-
lin Foundation, and the legal title is in the city of Boston.

Whatever has been said respecting the Franklin fund and
the powers of The Franklin Foundation so far as applicable
are equally pertinent to the Carnegie donation.   Thus the
prayers of the petition numbered 9–12 both inclusive and
other prayers touching the Carnegie donation are suf-
ficiently answered.

*Ordered accordingly.**

---

* The rescript accompanying this opinion ordered that a decree be entered
stating in substance that the answers to the several prayers of the bill were as
follows:

"To Prayer 1.   The city treasurer has no discretion as to investments of the
    Franklin fund but must follow directions in votes of the members of The
    Franklin Foundation.   No such direction is set forth in this record except
    as to the reinvestment of $100,000 in a certificate of the Massachusetts
    Hospital Life Insurance Company.
To Prayer 2.   The certificates and other evidences of title and investments
    should be in this form: City of Boston — The Franklin Foundation —
    Franklin Fund.
To Prayer 3.   The same as to prayer 2.
To Prayer 4.   The custody of the Franklin fund under the act of incorporation
    of The Franklin Foundation and article V, section 6 of its by-laws is in
    the treasurer of the city of Boston subject at all times to the direction of
    The Franklin Foundation.
To Prayer 5.   Yes.
To Prayer 6.   This is answered by 4.
To Prayer 7.   The Franklin Foundation has such power acting by vote of its
    members.
To Prayer 8.   The same as to prayer 7.
To Prayer 9.   The treasurer of the city of Boston is bound by directions given
    by The Franklin Foundation by vote of its members.
To Prayer 10.   The same as to prayer 4.
To Prayer 11.   City of Boston — The Franklin Foundation — Carnegie
    Donation.
To Prayer 12.   No.
To Prayer 13.   No.
To Prayer 14.   Covered by answer to prayer 1.
To Prayer 15.   Yes, to the extent stated by answer to prayer 1.
To Prayer 16.   No.
To Prayer 17.   Yes.
To Prayer 18.   Yes.
To Prayer 19.   No answer is required."