THE FRANKLIN FOUNDATION *vs.* CITY OF BOSTON
& others.

Suffolk.    March 5, 1957. — May 7, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, &
WHITTEMORE, JJ.

*Franklin Foundation. Boston. Trust,* Use of principal, Charitable trust.
*Municipal Corporations,* Trusts.

The principal of the donation made by Andrew Carnegie to the city of
Boston in 1905 for an institution subsequently established as the
Franklin Union, now the Franklin Technical Institute, cannot be used
for payment of payrolls and other current expenses of the institution.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on September 24, 1956.

The suit was reserved and reported by *Spalding,* J.

*Noel Morss,* (*Edward W. Raye* with him,) for the plaintiff.

*William H. Kerr,* (*Nicholas C. Crossen, Jr.,* with him,) for
the city of Boston and another.

*Hugh Morton,* Assistant Attorney General, for the Attorney General.

WILKINS, C.J.   This bill for declaratory relief is reported
without decision by a single justice on the bill and answers.
In issue are the terms of a gift made in 1905 by Andrew
Carnegie to the city of Boston, the plaintiff's contention
that there is a right to expend principal for current expenses
being disputed by the defendants, who are the city, the
collector-treasurer of the city, and the Attorney General.
See *City Bank Farmers Trust Co.* v. *Carpenter,* 319 Mass.
78, 81.

The plaintiff is the corporation organized pursuant to
St. 1908, c. 569, as amended by St. 1927, c. 40, and St.
1953, c. 77, which on behalf of the city has the sole care,
custody, management, and control of the institution Frank-

lin Technical Institute (formerly Franklin Union), and is charged with the expenditure of any money or estate given to the city for the benefit of that institution. On June 19, 1956, the plaintiff by a majority of its members voted that the collector-treasurer be "authorized and directed to use any cash in his hands forming part of the Carnegie Fund, as may from time to time be necessary, for the payment of requisitions of this corporation for payroll or other expenses of Franklin Technical Institute." The collector-treasurer refused. In consequence, the plaintiff was compelled to borrow money to meet the payrolls.

Benjamin Franklin, who died on April 17, 1790, by a codicil to his will bequeathed £1000 to the inhabitants of the town of Boston to be let out at interest to young married artificers, the capital to increase by the accumulated interest; set up a board of managers of the bequest; and provided: "If this Plan is executed and succeeds as projected without interruption for one hundred Years, the Sum will then be one hundred and thirty-one thousand Pounds, of which I would have the Managers of the Donation to the Town of Boston then lay out at their discretion one hundred thousand Pounds in Public Works which may be judged of most general utility to the Inhabitants, such as Fortifications, Bridges, Aqueducts, Public Buildings, Baths, Pavements, or whatever may make living in the Town more convenient to its People, and render it more agreeable to strangers, resorting thither for Health or a temporary residence. The remaining thirty-one thousand Pounds I would have continued to be let out on Interest in the manner above directed for another hundred Years . . . ."[1]

In 1904 Henry S. Pritchett, the president of Massachusetts Institute of Technology, and one of the managers of the Franklin bequest, visited Andrew Carnegie. They discussed the portion of that bequest available for use at the end of the first hundred years, amounting to $408,396.48. Referring to proposed plans for an evening training school,

[1] The codicil is extensively quoted in *Boston* v. *Doyle*, 184 Mass. 373, 376–379.

Mr. Carnegie asked why the "trustees"[1] hesitated. When Mr. Pritchett replied, "For lack of adequate funds," Mr. Carnegie said, "I'll match Ben Franklin."

Under date of October 28, 1904, Mr. Carnegie wrote Mr. Pritchett: "I do not see any reason to modify my voluntary offer, which was to duplicate the Franklin Fund of Four Hundred and Eight Thousand, Three Hundred Ninety-six Dollars Forty-eight Cents, should the City of Boston favor the establishment of a school on the lines of the Mechanics' and Tradesmen's School of New York, which has done and is doing such valuable work here. The Commission would do well I think to come to New York and examine that school, and also the Cooper Union. The City of Boston of course must furnish the site. I am a Trustee of both the schools mentioned and do not hesitate to say that to the best of my knowledge no money has produced more valuable results. I think it is from the class who not only spend laborious days, but who also spend laborious nights fitting themselves for hard work, that the most valuable citizens are to come. We are here helping only those who show an intense desire, and strong determination, to help themselves, — the only class worth helping, the only class that it is possible to help to any great extent."

In a letter of December 22, 1904, to Mayor Patrick A. Collins, Mr. Carnegie said in part, "my idea certainly was that the City of Boston should co-operate with the Franklin Fund and with my contribution. Frankly, I should not like to give aid to a City that would be willing to remain apart and do nothing. If the growing City of Boston, with such a Mayor, cannot give a site for the Franklin School, it must fall somewhat from the pinnacle I have set it upon. We expect great things from Boston. I think that all of the Franklin Fund, also my duplication, will be needed for the building and equipment. When you or your Committee see

---

[1] In *Higginson* v. *Turner*, 171 Mass. 586, 594, it was stated that the city was the trustee as successor to the inhabitants of the town of Boston, and that the managers were intended to assist in the administration of the fund.

the Cooper Union or the Mechanics' Institute, you will understand better. You may have noticed that I rarely give anything for nothing. I like to help only those who help themselves. New York City gives sites for seventy-odd Branch Libraries which I am building. Philadelphia gives sites for thirty, and both cities maintain the libraries. This latter, Boston would not have to do in the case of the proposed School."

On March 9, 1905, James J. Storrow, secretary of the board of managers, wrote Mr. Carnegie: "The Board of Managers of the Franklin Fund of Boston beg to assure you that the interval of time since the receipt of your generous offer to them has been used in making a careful examination of the Cooper Union and its work, and an estimate of what can be done by the Franklin Fund Managers along similar lines. This examination has led the Managers to believe that an institution in Boston similar to that of the Cooper Union and the Mechanics' and Tradesmen's School of New York would be a most useful object. They find that a suitable site can be purchased and a proper building erected for the sum of approximately $250,000.00. The Managers find, however, that they are confronted with several legal questions relating to the interpretation of Franklin's will, and, as soon as these are cleared up, they will take pleasure in communicating with you again as to a final decision."

At a meeting of the board of managers on April 26, 1905, Mr. Pritchett reported that, as directed by vote of the managers, he had conferred with Mr. Carnegie, who stated that he was willing that the fund to be contributed by him should be managed in any way that the city might determine; that he was content that after the establishment of the institution the management of the fund should come into the control of the city council; but that he insisted that the city must furnish a site for whatever institution was established. Mr. Pritchett submitted the following memorandum in Mr. Carnegie's handwriting, showing the result of the conference. "Boston to decide for itself about

control; what pleases her pleases me. I don't fear public control; indeed, I prefer it, because it ensures public interest and criticism — perfectly willing Councils should control. As to division of expenditure, that also is for Boston to decide. My impression is that a suitable building should be provided *at the start*, and by all means spare room be kept around it for extensions. Mechanics' and Tradesmen's here are now building a second extension; this is the fate of all such schools. Cooper Union has had same experience. Boston is to grow; so is her Franklin Union. Of course it should be fire-proof."

At the managers' meeting on April 26, 1905, two resolutions were adopted. The first was "That the Franklin Fund be expended in the establishment of an institution in Boston, along the lines of the Cooper Union and the Mechanics' and Tradesmen's School of New York, and that the name of the institution be 'The Franklin Union.'" The second was "That the generous offer of Mr. Andrew Carnegie, as contained in his letter dated October 28, 1904, and further explained in his memorandum of April 9th, 1905, be accepted."

On July 21, 1905, Mayor Collins wrote Mr. Carnegie: "On behalf of the Managers of the Franklin Fund, I have the honor to report that all the conditions governing your proposed contribution have been complied with, and that the Managers of the Fund are ready to accept the proffered bonds. I have the pleasure to enclose a copy of Chapter 448 of the Acts of the Massachusetts Legislature of the current year, authorizing the city to maintain the 'Franklin Union' and to appropriate an amount not to exceed $100,000 for a site for the same. I have also enclosed a copy of my letter to the City Council transmitting a copy of the act and an attested copy of the order of the Council accepting the same. The amount of the Franklin Fund is now $419,581.93, and the $100,000 appropriated will be ample for the site."

In reply under date of August 5, 1905, Mr. Carnegie wrote, "I shall take pleasure in forwarding the bonds with an official letter in due time."

On August 30, 1905, the secretary to Mr. Carnegie's

cashier wrote Mayor Collins, "I beg to advise you that I have this day received advices from Mr. Andrew Carnegie instructing his Cashier, Mr. R. A. Franks, to send you bonds in payment for his contribution towards the 'Franklin Union.'"

Under date of November 28, 1905, there was transmitted to the mayor by Mr. Carnegie's cashier the donation, consisting of $408,000 in bonds and a check for $396.48, with a covering letter, the text of which has not been preserved, and with a voucher reading in part as follows: "For Amount paid in United States Steel Corporation Bonds on account of contribution to 'Franklin Union,' $408,000.00. Amount paid by check, $396.48    $408,396.48."

On December 1, 1905, the city treasurer acknowledged the receipt of the bonds and the check, "being the donation of Mr. Andrew Carnegie to the Franklin Union."

On January 18, 1906, the board of managers met and "were notified informally" that the city treasurer had received from the cashier for Mr. Carnegie "$408,396.48 as an endowment fund for the proposed Franklin Union." We shall not rely upon this statement in the record of that meeting in making our decision.

Franklin Technical Institute, then Franklin Union, which opened its doors to students in September, 1908, was built on land purchased by the city with the proceeds of a bond issue authorized by St. 1905, c. 448, and the building and initial equipment were paid for out of Franklin's bequest. No part of the principal of the Carnegie donation was used to build, or has since been spent directly for the benefit of, the Institute, but the principal has been invested and the income has been paid out for the benefit of the Institute as directed by the plaintiff. The book value of the principal on June 30, 1956, was $496,343.

The Franklin fund has been the subject of previous decisions of this court, but none related to the precise question before us. In *Higginson* v. *Turner*, 171 Mass. 586, decided in 1898, it was held that legal title to the fund was in the municipality for the purposes specified and was not in the managers. In *Boston* v. *Doyle*, 184 Mass. 373, decided in

1903, instructions were given that upon the incorporation of Boston as a city the aldermen did not succeed the selectmen as managers of the fund; that only the three clerical members remained eligible to continue as such; and that a court of general equity jurisdiction should appoint nine managers from among the virtuous and benevolent citizens of Boston selected because of their intellectual and moral qualifications, of whom the mayor should be one, to serve with the clerical members. In *Boston* v. *Curley,* 276 Mass. 549, upon a petition by the city and its treasurer against the present plaintiff, its members and board of managers, the Commonwealth, and the Attorney General, in 1931 an instruction was given in substance that as to the investment, reinvestment, management, and control of the Carnegie donation the city treasurer is bound by directions of The Franklin Foundation by vote of its members, the court stating at page 565, "The management and the control of this donation were in the board of managers before the effective date of . . . [St. 1908] c. 569, and since then have been in The Franklin Foundation, and the legal title is in the city of Boston."

The ultimate purpose of the Franklin fund is the accumulation of capital to "lay out" in public works after the centennial and bi-centennial of his death. Mr. Carnegie became interested in a proposed laying out of capital from that fund in an evening training school. His knowledge that hesitation in launching the project was due to lack of adequate funds led him to offer to "match Ben Franklin," or, as he later wrote, "to duplicate the Franklin Fund." As was said in *Boston* v. *Curley,* 276 Mass. 549, 563–564, he "indicated his willingness to duplicate in amount the Franklin fund provided conditions were met as to the kind of school to be established and that the city of Boston should provide a site for it. . . . It is apparent from the correspondence that the purpose of Mr. Carnegie was centered on the establishment of the school subsequently established under the name Franklin Union. . . . It was to the support of that school that Mr. Carnegie desired to contribute."

The plaintiff contends that the documents accompanying the gift do no more than identify it as for the benefit of the school and contain no further restriction. It is a matter of speculation to what extent this contention would have been open had there been preserved the cashier's letter of transmittal or Mr. Carnegie's letter of instructions to the cashier, either of which might have met the description of "an official letter" mentioned in Mr. Carnegie's letter of August 5, 1905. Although deprived of the possibly conclusive contents of the official letter, we are not forced to look only at the documents accompanying the gift, or to accept the contention that the whole correspondence is barren of an explicit formulation by the donor of any limitation of the use of the principal of his gift.

It was Mr. Carnegie's first thought that "all of the Franklin Fund, also my duplication, will be needed for the building and equipment." Before he made his contribution, however, he was informed that "a suitable site can be purchased and a proper building erected for the sum of approximately $250,-000." It was with this knowledge that he spoke in his memorandum of the necessity of allowance of room for extensions, and leaving the "division of expenditure" to the city's decision. We have no way of knowing positively to what the phrase "division of expenditure" referred. A reasonable interpretation is a division between present outlay and a fund for future extensions. We do not agree that the discretion given the city as to the division cannot be reconciled with a restriction on the spending of capital. We observe nothing fatal to this view in the fact that so far there has been no outlay of the Carnegie donation upon buildings and equipment. Where extensions were contemplated, it was reasonable to have a fund with which to make them.

Taking into consideration the entire transaction with its antecedent discussion, both written and oral, we think that Mr. Carnegie in directing his donation to the Franklin Union intended to double the amount of capital available for the purposes of the school. This means that his donation

could be laid out in the same way as could the Franklin fund, of which there is no suggestion that any part could be expended for current expenses or ordinary maintenance. Permissible expenditures would include, as the managers (now the Foundation) might decide, the "extensions" anticipated in Mr. Carnegie's memorandum, but would not include the payment of salaries or the repayment of loans incurred to pay salaries. Our conclusion is in harmony with the statement by Chief Justice Rugg in *Boston* v. *Curley,* 276 Mass. 549, 564–565: "the Carnegie donation is to be treated in the same way as the Franklin fund. It is to be presumed in the absence of any indication to the contrary that its title and management follow the same course as that of the Franklin fund. *Trustees of Andover Theological Seminary* v. *Visitors,* 253 Mass. 256, 272–273." See *Cary Library* v. *Bliss,* 151 Mass. 364, 377. As we view the case, payment of salaries and current expenses out of capital are subject to the same principle, and express language would be necessary to reach another result. This is particularly true after the lapse of nearly fifty years. Scott on Trusts (2d ed.) § 392. See *Trustees of Andover Theological Seminary* v. *Visitors,* 253 Mass. 256, 298.

The plaintiff objects that the Carnegie donation, if a capital fund, has been misapplied by the managers who have invested it and have applied the income to the use of the school. It is not alleged that there is any controversy in this respect, and we have not been asked to make a binding declaration as to the propriety of this practice. We, accordingly, do not make one.

A final decree is to be entered declaring that the principal of the Carnegie donation cannot be used in payment of payrolls or other current expenses, or to repay money borrowed by the plaintiff for the benefit of the institution; and that the collector-treasurer of the city of Boston is not bound to use cash in his hands constituting such principal to meet requisitions of the plaintiff for payroll or other current expenses.

*So ordered.*