THE FRANKLIN FOUNDATION *vs.* ATTORNEY GENERAL
& others.

Suffolk.    November 5, 1959. — January 5, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Franklin Fund. Trust,* Termination, Charitable trust, Situs, Use of principal. *Commonwealth,* Proceeding against Commonwealth. *Equity Pleading and Practice,* Parties. *Conflict of Laws. Justiciable Question.*

St. 1958, c. 596, § 1, requiring payment to The Franklin Foundation of the portion of the fund bequeathed by Benjamin Franklin to Boston in trust which would be distributable to the Commonwealth on termination of the trust and terminating the trust as to such portion, "provided, however, that such payment shall not be made and said trust as to said portion shall not terminate unless and until a decree

---

of the supreme judicial court authorizes such payment and termination," indicated a legislative intent that the Commonwealth could be made a party to a suit for such decree, and the Commonwealth properly was made a party thereto. [203]

The law of Massachusetts governed the determination of questions respecting the termination of a testamentary trust created under the will of a citizen of another State but administered here by a municipality designated in the will as trustee. [203]

The codicil to the will of Benjamin Franklin executed in 1789, bequeathing money to Boston in trust to lend it at interest to young married artificers who had served an indentured apprenticeship in order to assist them in setting up in business, and providing that at the end of one hundred years there should be spent from the fund a stated sum "in public works," that for the ensuing one hundred years the fund should continue to be loaned at interest in the same manner, and that at the end of the second hundred years the fund should be divided between Boston and Massachusetts, indicated a purpose on the part of the testator to make the gifts to the city and the State at the time stated and after accumulation, in addition to the purpose to make the loans; and the record in a suit in equity "to implement St. 1958, c. 596," providing for payment of the fund to The Franklin Foundation and termination of the trust, if this court so authorized, disclosed no present occasion in equity for termination of the trust even if the loan program had ceased all usefulness. [204–207]

Whether or not the purposes of a trust have been achieved, so that it should be terminated, is a justiciable question. [205]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 19, 1959.

The case was reserved and reported by *Williams, J.,* without decision.

*William H. Kerr,* stated the case.

*Noel Morss, (Edward W. Raye* with him,) for the plaintiff.

*Richard H. Gens,* Assistant Attorney General, for the Attorney General.

WILKINS, C.J. This bill in equity is described in the briefs as brought "to implement St. 1958, c. 596," which is entitled, "An Act providing for the payment to The Franklin Foundation for the benefit of the Franklin Technical Institute of the trust fund bequeathed by Benjamin Franklin to the inhabitants of the town of Boston." The defendants are the Attorney General, the Commonwealth, and the city of Boston "as it is trustee of a fund commonly known as the Franklin Fund, and as it may otherwise be interested in

said fund." The Attorney General has filed a document entitled "Answer of the Attorney General and the Commonwealth of Massachusetts," which, as written, is an answer of the Attorney General alone. The city of Boston filed an answer. Both answers in substance admit the allegations of the bill but express various doubts as to the validity of the act. The case has been reported without decision by a single justice upon the bill of complaint and the answers.

Statute 1958, c. 596, § 1, reads, "That portion of the fund bequeathed by Benjamin Franklin to the inhabitants of the town of Boston in trust which is distributable to the commonwealth on termination of the trust shall be paid over to The Franklin Foundation for the maintenance, extension or otherwise for the benefit of the Franklin Technical Institute, and as to said portion said trust shall thereupon terminate; provided, however, that such payment shall not be made and said trust as to said portion shall not terminate unless and until a decree of the supreme judicial court authorizes such payment and termination." Section 2 makes an identical provision for "That portion of the fund . . . which is distributable to the city of Boston on termination of the trust." Section 3 made the provisions of § 2 subject to acceptance by vote of the city council approved by the mayor. Such acceptance and approval were duly given. The market value of the fund on February 28, 1959, was $1,578,098.

Benjamin Franklin, a citizen of Pennsylvania, died on April 17, 1790, leaving a will dated July 17, 1788, and a codicil dated June 23, 1789, which were proved and allowed on April 23, 1790. By the codicil, which is lengthy, he bequeathed £1000 sterling each in trust to the inhabitants of the town of Boston and to the inhabitants of the city of Philadelphia. The history of the bequest to Boston appears in our previous decisions. *Higginson* v. *Turner*, 171 Mass. 586. *Boston* v. *Doyle*, 184 Mass. 373. *Boston* v. *Curley*, 276 Mass. 549. *Franklin Foundation* v. *Boston*, 336 Mass. 39.

The £1000 in trust to Boston "shall be managed under

the direction of the Select Men, united with the Ministers
of the oldest Episcopalian, Congregational and Presbyterian
Churches in that Town; who are to let out the same upon
Interest at five per Cent per Annum to such young married
Artificers, under the Age of twenty five Years, as have
served an Apprenticeship in the said Town; and faithfully
fulfilled the Duties required in their Indentures, so as to
obtain a good moral Character from at least two respectable
Citizens, who are willing to become their Sureties in a Bond
with the Applicants for the Repayment of the Monies so
lent with Interest according to the Terms herein after pre-
scribed." The loans are intended to assist the borrowers
in setting up in business, and are to be between £15 and £60.
"And as it is presumed that there will always be found in
Boston virtuous and benevolent Citizens, willing to bestow
a part of their Time in doing good to the rising Generation,
by superintending and managing this Institution gratis,
it is hoped that no part of the Money will at any time lie
dead or be diverted to other purposes, but be continually
augmenting by the Interest, in which case there may in time
be more than the occasions in Boston shall require, and
then some may be spared to the Neighboring or other Towns
in the said State of Massachusetts who may desire to have it,
such Towns engaging to pay punctually the Interest and the
Portions of the principal annually to the Inhabitants of the
Town of Boston. If this Plan is executed and succeeds as
projected without interruption for one hundred Years, the
Sum will then be one hundred and thirty one Thousand
Pounds," of which the managers are then to lay out £100,000
in public works. "The remaining thirty one thousand
Pounds, I would have continued to be let out on Interest in
the manner above directed for another hundred Years, as I
hope it will have been found that the Institution has had a
good effect on the conduct of Youth, and been of Service to
many worthy Characters and useful Citizens. At the end
of this second Term, if no unfortunate accident has pre-
vented the operation, the Sum will be Four Millions and
sixty one Thousand Pounds Sterling; of which I leave one

Million sixty one Thousand Pounds to the Disposition of the Inhabitants of the Town of Boston and Three Millions to the Disposition of the Government of the State, not presuming to carry my Views farther." "I have perhaps too much flattered myself with a vain Fancy, that these Dispositions, if carried into execution, will be continued without interruption, and have the Effects proposed . . . I think that tho' unforseen Difficulties may arise, expedients will be found to remove them, and the Scheme be found practicable . . . ."

At a town meeting on May 25, 1790, Boston accepted the bequest, and in March, 1791, received $4,444.44 from the executors. The managers met on April 8, and the first loans to artificers were made on or about May 3, 1791. Until February 23, 1822, when Boston became a city, the selectmen and ministers designated in the codicil managed the fund. From then until 1902 the aldermen or mayor and aldermen acted with the ministers as managers. Following the decision in 1904 in *Boston* v. *Doyle*, 184 Mass. 373, the management of the fund has been in the ministers and in the mayor and eight other persons appointed by the Supreme Judicial Court for the county of Suffolk. By St. 1908, c. 569, the managers were incorporated as the plaintiff corporation and empowered to manage what is now called Franklin Technical Institute.

For the first few years of the operation of the fund substantially all of it was kept loaned to artificers. Thereafter until 1811 the number of properly qualified applicants progressively decreased. By 1836 less than six per cent of the fund was so employed, and by 1866 less than one per cent. No loans have been made since 1886. This situation has been brought about by difficulty in finding sureties, changes in economic conditions, and decline in the number of articled apprentices.

From about 1819 the managers invested that part of the fund not used in loans in obligations maturing in not longer than five years. From 1827 to 1931 most of the fund was invested with the Massachusetts Hospital Life Insurance

Company. Since 1931 the fund has been invested in diversified securities.

On January 1, 1894, the fund was $431,395.70. On January 17, 1894, there was paid from the fund to the city treasurer (now collector-treasurer) $329,300.38, as the sum to be laid out at the end of the first hundred years.[1] This money and accumulations of income, aggregating $435,000, were spent in the establishment and equipment of Franklin Union (now Franklin Technical Institute, St. 1941, c. 212) along with an equal sum given by Andrew Carnegie. *Franklin Foundation* v. *Boston*, 336 Mass. 39.

Franklin Technical Institute offers courses in engineering technology leading to a degree and provides training at the post-high school level in industrial technology. Its educational standards are high, and it is recognized as one of the leaders in the technical institute field. Its enrollment has been sharply increasing in recent years. In October, 1958, there were 356 students in the day school and 729 in the night school. Operating revenues are derived from tuitions, endowment income, and gifts. On June 30, 1958, the book value of invested funds managed by the plaintiff for the benefit of the institute was $679,712, consisting of the Carnegie Fund of $502,236, the title to which is in the city, and $177,476 held by the plaintiff in its own name. The institution is currently operating on a balanced budget, but could effectively employ additional funds in strengthening its present services and particularly in enlarging its facilities and staff to serve an increased student body. The need for expanding technical institute education is imperative both in this Commonwealth and in the nation.

It is impossible to employ the fund in loans to the class of persons and upon the terms prescribed by the testator. The plaintiff has considered the possibility of obtaining leave of court to modify these terms, but in the opinion of the plaintiff it is not practicable to employ the fund or any

---

[1] The fund had not attained £131,000, as expected in the codicil. The amount paid was 100/131 of the principal, or $298,602.04, with interest from July 1, 1891.

substantial portion in making loans under any modification of the testator's plan which would advance young persons of the general class contemplated by him, or its approximate equivalent, or serve any public or charitable purpose, while at the same time providing reasonable assurance of the preservation and increase of the fund.

1. The Commonwealth is properly a party to this suit. In *Glickman* v. *Commonwealth*, 244 Mass. 148, 149, it was said that "the Commonwealth cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the manner and to the extent expressed in the statute." The statutory reference in that case was to G. L. c. 258, § 1, reading, "The superior court, except as otherwise expressly provided, shall have jurisdiction of all claims at law or in equity against the commonwealth. . . ." An express purpose of St. 1958, c. 596, was to enable this court to make a decree respecting the termination of a trust fund which is distributable in part to the Commonwealth and in part to the city of Boston. The Legislature must have contemplated that the Commonwealth could be made a party. The inclusion of the Commonwealth in the title of the answer of the Attorney General constituted a general appearance. The absence of a detailed answer is unimportant. The entry of a proper decree is still the issue in the case. See *Publico* v. *Building Inspector of Quincy*, 336 Mass. 152, 153.

2. The trust was to be administered in this Commonwealth for two hundred years. Termination is largely a matter for determination under the law governing administration of the trust, in this case the law of Massachusetts, which may govern this trust in other respects. See *Boston Safe Deposit & Trust Co.* v. *Alfred Univ.* 339 Mass. 82, 85–86, and authorities cited. Restatement 2d: Conflict of Laws (Tent. draft No. 5, April 24, 1959), § 298. No question of the possible relevance of Pennsylvania law has been argued. As to this we need make no decision. But see Restatement 2d: Conflict of Laws, § 295, comment a and reporter's note tentative draft, p. 177. Certain cases may be noted in

which the law of a State other than that of the domicil of a testator or a settlor has been applied, in determining substantive as well as administrative problems, to a trust in the course of administration in such other State. *Amerige* v. *Attorney Gen.* 324 Mass. 648, 659–660. *National Shawmut Bank* v. *Cumming,* 325 Mass. 457, 463–464. See Restatement 2d: Conflict of Laws, § 294, and reporter's note tentative draft, p. 169.

3. We are of opinion that the record does not disclose facts sufficient to cause us to exercise our authority in equity to terminate the trust. We need not speculate as to any other possibilities not now presented. In stating one ground for our opinion we do not intimate that there may not be other serious objections to the plan projected in St. 1958, c. 596. The plaintiff argues as though the making of loans to young artificers was the sole purpose of the testator. We are unable to agree with this contention, as we think that Franklin had another purpose, which was to make a gift to the city at the centennial of the fund, and to the Commonwealth and to the city at the two hundredth anniversary of the fund. In 1891 the money was to be expended on public works, and in 1991[1] the money is to be at the disposition of the State and city government, whether to be expended on public works or other public purposes is beside the point. See *Franklin Foundation* v. *Boston,* 336 Mass. 39, 45. Franklin estimated what would be the principal sum in one hundred years, and, after deducting £100,000, he estimated what would be the accretion to £31,000 in a second hundred years. He then made an unequal division between the Commonwealth and the city of the estimated fund in 1991. We are not convinced that his charitable objectives have ceased to be in accord with the public interest or have become so unreasonable under current conditions that we should exercise our undoubted equitable power of termination even if the loan program has ceased all usefulness.

[1] A question as to whether the precise date of termination is to be in 1990 or 1991 does not require a decision at this time.

"If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." Restatement 2d: Trusts, § 337 (2). *Rowland* v. *June*, 327 Mass. 455, 458, and cases cited. *Gordon* v. *Gordon*, 332 Mass. 193, 196–197. *Springfield Safe Deposit & Trust Co.* v. *Stoop*, 326 Mass. 363, 365. Scott, Trusts (2d ed.) § 337. This principle applies to charitable trusts. Scott, Trusts (2d ed.) § 367A. It applies to any consent by the Commonwealth or the city to alter Franklin's codicil.

The decision whether the purposes of the trust have been achieved is a judicial matter. The courts alone can make that decision. That the Legislature so recognized in enacting c. 596, §§ 1, 2, abundantly appears from the provision that "payment shall not be made and said trust . . . shall not terminate unless and until a decree of the supreme judicial court authorizes such payment and termination." We do not accept the plaintiff's argument that there has been a legislative determination that public policy favors termination. At most the Legislature was attempting to give consent to the procedure outlined in c. 596.

4. Although no present occasion has been shown for termination there need be no sterile accumulation. Notwithstanding the plaintiff's contrary opinion alleged in the bill, some charitable outlet, even with the plaintiff, probably could be found for use of the income until 1991. That there is no possibility of making the loans contemplated by the testator is no reason to hand over to the plaintiff the principal of a fund which under the codicil was never to be given to the managers at any time. Rather than risk an application of the doctrine of cy pres in the courts, where the plaintiff would have to take its chances with other charities, it relies upon a statute the effect of which it seeks to enlarge.

The plaintiff enumerates provisions of the bequest which, it urges, show that "the entire emphasis is on the benefits of the loan plan, and on that alone, as the purpose of the continuing trust." We shall mention those which merit discussion.

First, it is said that the testator substitutes the bequests
to the two cities for a bequest of £2000 in the will for the
improvement of the Schuylkill River, understanding that
"such a Sum will do but little towards accomplishing such
a Work, and that the project is not likely to be undertaken
for many Years to come." Later in the codicil, in giving
the same directions respecting the disposition and manage-
ment of the donation to Philadelphia as had been given to
Boston, the testator states with respect to the use of the
£100,000 to be given at the end of the first hundred years,
"I also recommend making the Schuylkill compleatly
navigable." All that this shows is a preference for the avail-
ability of all or part of £100,000 in one hundred years to
£2000 at the time of the gift as a means of improving the
Schuylkill.

The plaintiff also refers to the testator's expressed hope
that no part of the fund will at any time "lie dead" and that
it will not be "diverted to other purposes." It is argued that
this must mean "during the continuation of the trust,"
since he himself diverts the sum to other purposes thereafter.
The words of Franklin, fully quoted above, refute this
argument. To restate what the codicil says, "it is hoped
that no part of the Money will at any time lie dead or be
diverted to other purposes, but be continually augmenting
by the Interest, in which case there may in time be more
than the occasions in Boston shall require, and then some
may be spared to the Neighboring or other Towns in the
said State of Massachusetts who may desire to have it, such
Towns engaging to pay punctually the Interest and the
Portions of the principal annually to the Inhabitants of the
Town of Boston." We agree that the reasonable interpreta-
tion is that there may be loans to artificers in other towns,
but we see an equally dominating intent to accumulate for
the gifts of principal in one hundred and two hundred years.
We also agree that Franklin did intend that the accumula-
tion should be achieved by the device of making loans to
young artificers. But we have been shown nothing to
justify the suggestion that he would wish all accumulation

to cease if not capable of accomplishment in that way. That the trust will not attain by the date set for termination the principal amount estimated by the testator is unimportant. We observe in the codicil an intent to provide substantial gifts to future generations in the two cities. We shall not defeat that intent by destroying the trust now as to the Commonwealth and the city of Boston.

No useful purpose would be served by analysis of the cases cited by the plaintiff. Franklin's codicil is unique.

5. A final decree is to be entered to the effect that the Commonwealth is properly a party to this suit, and that the trust is not to be terminated under St. 1958, c. 596.

*So ordered.*